JOHN C. PETERSON AND KATHY M. PETERSON, HUSBAND
AND WIFE, APPELLANTS, V. THE OHIO CASUALTY GROUP,
A FOREIGN INSURANCE COMPANY, ALSO KNOWN AS
WEST AMERICAN INSURANCE COMPANY, APPELLEE.
724 N.W.2d 765

Filed December 8, 2006.   No. S-05-691.

Michael F. Coyle and Timothy J. Thalken, of Fraser, Stryker, Meusey, Olson, Boyer & Bloch, P.C., for appellants.

Richard C. Gordon, Betty L. Egan, and Kylie A. Wolf, of Walentine, O'Toole, McQuillan & Gordon, for appellee.

WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

Appellants, John C. Peterson (Peterson) and Kathy M. Peterson, filed a declaratory judgment action in the district court for Douglas County against appellee The Ohio Casualty Group, also known as West American Insurance Company (Ohio Casualty). The Petersons sought a declaration that Ohio Casualty had an obligation under two insurance policies to defend and indemnify Peterson in a lawsuit filed against him by Richard J. Holcomb. In 2003, the district court entered summary judgment in favor of Ohio Casualty, and the Petersons appealed. In a memorandum opinion, we determined that deficiencies in the record precluded meaningful appellate review, and we therefore reversed, and remanded for further proceedings. Following remand, the parties filed cross-motions for summary judgment and supplemented the record. The district court concluded that Ohio Casualty had no obligation to indemnify or defend the Petersons in the Holcomb lawsuit, and entered judgment in its favor. We affirm.

# I. BACKGROUND

On May 10, 1999, Holcomb filed a lawsuit against Peterson, individually, and Anesthesia West, P.C. Thereafter, Holcomb filed several amended petitions which added parties, facts, and claims, culminating in his sixth amended petition filed on November 29, 2001. The Holcomb petition and amended petitions are included in the bill of exceptions and allege the following facts which are not disputed for purposes of this case:

Holcomb and Peterson are anesthesiologists. Both were at one time employees, directors, and shareholders of Anesthesia West, a professional corporation conducting business in Douglas County. On November 30, 1998, Holcomb's employment agreement with Anesthesia West was terminated.

In each petition and amended petition, Holcomb asserted various causes of action against one or more named parties. Included is a defamation claim against Peterson, in which Holcomb alleged that Peterson had "made false and defamatory" statements and allegations pertaining to Holcomb's professional competence and his conduct with an employee. In this claim, Holcomb further alleged that Peterson had "made unprivileged publication of . . . false and defamatory communications to third parties, including to Methodist [Hospital] and to third-party physicians and others." The Petersons' coverage claims asserted in this action are based solely on the allegations of Holcomb's defamation claim against Peterson.

At the time the Holcomb lawsuit was filed, the Petersons were insured under a homeowner's insurance policy and a personal umbrella liability endorsement (umbrella policy), both issued by Ohio Casualty. The homeowner's policy defines "[b]usiness" as including "trade, profession or occupation." The section of the homeowner's policy describing liability coverage includes the following:

> COVERAGE E - Personal Liability
>
> If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" . . . caused by an "occurrence" to which this coverage applies, we will:
>
> 1. Pay up to our limit of liability for the damages for which the "insured" is legally liable. . . .

2. Provide a defense at our expense . . . even if the suit is groundless, false or fraudulent.

The homeowner's policy also includes the following exclusion:

1. Coverage E - Personal Liability . . . do[es] not apply to "bodily injury" . . .

a. Which is expected or intended by the "insured";

b. Arising out of or in connection with a "business" engaged in by an "insured."

However, the homeowner's policy contains a "HOMEOWNERS ADDITIONAL COVERAGES ENDORSEMENT" which states:

2. Under Section II, Coverage E - Personal Liability, the definition "Bodily Injury" is amended to include personal injury. "Personal Injury" means injury arising out of one or more of the following offenses:

. . . .

b. libel, slander or defamation of character . . . .

. . . .

Section II Exclusions do not apply to this coverage. This coverage does not apply to:

. . . .

c. injury sustained by any person as a result of an offense directly or indirectly related to the employment of this person by the Insured;

d. injury arising out of the business pursuits of an Insured . . . .

The umbrella policy includes the following defined terms:

4. "Business" includes trade, profession or occupation (but not farming).

5. "Damages" mean the total of:

a. The amount the insured must pay . . . because of "personal injury" . . . covered by this endorsement; and

b. Reasonable expenses the insured incurs in the . . . defense . . . of a claim or suit because of "personal injury" . . . covered by this endorsement.

. . . .

8. "Personal injury" means:

. . . .

b. Injury arising out of:

. . . .

(2) Libel, slander, defamation, humiliation, or a publication or utterance in violation of a person's right of privacy; or

. . . .

12. "Underlying insurance" . . . includes any other insurance available to the insured.

The umbrella policy includes the following coverage and exclusions:

A. INSURING AGREEMENTS

1. Excess Liability Insurance

We will pay on behalf of the insured all sums for "damages" due to "personal injury" . . . in excess of the limits of "underlying insurance" and for expenses caused by an occurrence . . . . The "personal injury" . . . must be covered by "underlying insurance."

. . . .

We have the right to defend any claim or suit against the insured seeking "damages" for "personal injury" . . . to which this insurance applies; but:

. . . .

d. We have a duty to defend all claims or suits not covered by the "underlying insurance" shown in the underlying insurance endorsement;

. . . .

B. EXCLUSIONS

We do not cover:

. . . .

6. "Personal injury" . . . due to acts committed by or at an insured's direction with intent to cause "personal injury"

. . . .

7. "Personal injury" . . . due to "business" pursuits . . . . Our coverage is no broader than the "underlying insurance"

. . . .

. . . .

12. Liability due to activities as a member of a board of directors of, or as an officer of, an organization other than a charitable, religious or civic non-profit organization.

Through counsel, the Petersons sent a letter dated May 19, 1999, to Ohio Casualty, enclosing a copy of the original petition

filed by Holcomb and requesting that Ohio Casualty indemnify and defend Peterson. In response, Ohio Casualty denied coverage under both the homeowner's policy and the umbrella policy. Referring to the Holcomb petition and citing language from the insurance policies, Ohio Casualty stated that Holcomb's defamation claim against Peterson fell within the business pursuits exclusions of the policies and that therefore, no coverage was provided. Ohio Casualty made no references to an investigation in these letters.

Thereafter, the Petersons commenced this action in which they claimed that coverage was provided under both policies and that Ohio Casualty had a duty to defend Peterson in the pending Holcomb lawsuit. In an amended petition filed March 21, 2003, the Petersons alleged that the Holcomb lawsuit had been settled and that Ohio Casualty was bound by the unspecified terms of the settlement and obligated to pay Peterson's defense costs.

As noted above, this matter is before us now for the second time. In our memorandum opinion and judgment on appeal filed January 12, 2005, we reversed an order of the district court granting summary judgment in favor of Ohio Casualty. We stated that because of deficiencies in the record, we could not determine the correctness of the order of the district court. We therefore reversed, and remanded for further proceedings. We did not reach the substantive issue of whether coverage was provided under the policies in question. See *Peterson v. Ohio Casualty Group*, 269 Neb. xix (No. S-03-957, Jan. 12, 2005).

Following remand, the parties again filed cross-motions for summary judgment. At a hearing on the motions, the parties reoffered evidence received on the previous motions and also offered additional evidence, which was received by the district court. Subsequently, the district court entered judgment in favor of Ohio Casualty. After a detailed review and analysis of the evidence pertaining to the Holcomb lawsuit, other evidence received, and applicable legal principles, the court concluded: "The 'business pursuits' exclusion is unambiguous. The facts are not in dispute. The Holcomb lawsuit is a business dispute. The defamation claim falls with[in] the 'business pursuits' exclusion."

The Petersons perfected this timely appeal, which we removed to our docket pursuant to our statutory authority to regulate the

caseloads of the appellate courts of this state. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## II. ASSIGNMENTS OF ERROR

The Petersons assign, restated and consolidated, that the district court erred in (1) finding the business pursuits exclusions in the Ohio Casualty policies were unambiguous; (2) finding, as a matter of law, that the allegations in Holcomb's petitions arose out of Peterson's business pursuits; (3) finding, as a matter of law, that Ohio Casualty did not have a duty to defend or indemnify the Petersons; and (4) granting summary judgment for Ohio Casualty and against the Petersons.

## III. STANDARD OF REVIEW

When adverse parties have each moved for summary judgment and the trial court has sustained one of the motions, the reviewing court obtains jurisdiction over both motions and may determine the controversy which is the subject of those motions or make an order specifying the facts which appear without substantial controversy and direct such further proceedings as the court deems just. *City of Columbus v. Swanson*, 270 Neb. 713, 708 N.W.2d 225 (2005); *Neff Towing Serv. v. United States Fire Ins. Co.*, 264 Neb. 846, 652 N.W.2d 604 (2002).

Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Richards v. Meeske*, 268 Neb. 901, 689 N.W.2d 337 (2004). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

When a declaratory judgment action presents a question of law, an appellate court has an obligation to reach its conclusion independently of the conclusion reached by the trial court with regard to that question. *Neff Towing Serv. v. United States Fire Ins. Co., supra.*

The interpretation of an insurance policy is a question of law, in connection with which an appellate court has an

obligation to reach its own conclusions independently of the determination made by the lower court. *Hillabrand v. American Fam. Mut. Ins. Co.*, 271 Neb. 585, 713 N.W.2d 494 (2006); *Neff Towing Serv. v. United States Fire Ins. Co., supra.*

## IV. ANALYSIS

### 1. AMBIGUITY

■ The Petersons assign error by the district court in finding the policy exclusions at issue to be unambiguous, but they do not argue this point in their brief. Errors assigned but not argued will not be addressed on appeal. *Shipferling v. Cook*, 266 Neb. 430, 665 N.W.2d 648 (2003). However, insofar as it is necessary to resolve this issue in order to address the Petersons' other assignments of error, we note that an insurance contract is to be construed as any other contract to give effect to the parties' intentions at the time the contract was made. *Farm Bureau Ins. Co. v. Martinsen*, 265 Neb. 770, 659 N.W.2d 823 (2003). Parties to an insurance contract may contract for any lawful coverage, and an insurer may limit its liability and impose restrictions and conditions upon its obligations under the contract if the restrictions and conditions are not inconsistent with public policy or statute. *Neff Towing Serv. v. United States Fire Ins. Co., supra.* When the terms of a contract are clear, a court may not resort to rules of construction, and the terms are to be accorded their plain and ordinary meaning as the ordinary or reasonable person would understand them. *American Fam. Mut. Ins. Co. v. Hadley*, 264 Neb. 435, 648 N.W.2d 769 (2002). We agree with the conclusion of the district court that the business pursuits exclusions in the two policies are not ambiguous and clearly encompass the professional practice of anesthesiology within their scope.

### 2. DUTY TO DEFEND AND INDEMNIFY

#### (a) General Principles

■ Coverage under an insurance policy or contract is generally understood to consist of two separate and distinct obligations: the duty to defend any suit filed against the insured party and the duty to pay, on behalf of the insured, sums for which the insured shall become legally obligated to pay because

of injury caused to a third party by acts of the insured. *Chief Indus. v. Great Northern Ins. Co.*, 268 Neb. 450, 683 N.W.2d 374 (2004). An insurer's duty to defend is broader than its duty to indemnify. *John Markel Ford v. Auto-Owners Ins. Co.*, 249 Neb. 286, 543 N.W.2d 173 (1996).

An insurer's duty to defend an action against the insured must, in the first instance, be measured by the allegations of the petition against the insured. *Millard Warehouse, Inc. v. Hartford Fire Ins. Co.*, 204 Neb. 518, 283 N.W.2d 56 (1979). In determining its duty to defend, an insurer must not only look to the petition or complaint filed against its insured, but must also investigate and ascertain the relevant facts from all available sources. *Neff Towing Serv. v. United States Fire Ins. Co.*, 264 Neb. 846, 652 N.W.2d 604 (2002). An insurer is obligated to defend if (1) the allegations of the complaint, if true, would obligate the insurer to indemnify, or (2) a reasonable investigation of the actual facts by the insurer would or does disclose facts that would obligate the insurer to indemnify. *Mapes Indus. v. United States F. & G. Co.*, 252 Neb. 154, 560 N.W.2d 814 (1997). An insurer, therefore, bears a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy. *Allstate Ins. Co. v. Novak*, 210 Neb. 184, 313 N.W.2d 636 (1981).

An insurer's duty to defend is usually a contractual duty, rather than one imposed by operation of law. *Chief Indus. v. Great Northern Ins. Co., supra*; *Ohio Cas. Ins. Co. v. Carman Cartage Co.*, 262 Neb. 930, 636 N.W.2d 862 (2001). The nature of the duty to defend is defined by the insurance policy as a contract. *Id.* Although an insurer is obligated to defend all suits against the insured, even if groundless, false, or fraudulent, the insurer is not bound to defend a suit based on a claim outside the coverage of the policy. *Neff Towing Serv. v. United States Fire Ins. Co., supra*. The burden to prove that an exclusionary clause in a policy applies rests on the insurer. *Farm Bureau Ins. Co. v. Witte*, 256 Neb. 919, 594 N.W.2d 574 (1999). If, according to the facts alleged in a pleading and ascertained by an insurer, the insurer has no potential liability to its insured under the insurance agreement, then the insurer may properly refuse to

defend its insured. *Allied Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 243 Neb. 779, 502 N.W.2d 484 (1993).

### (b) Reasonable Investigation

The Petersons argue that Ohio Casualty conducted a less than thorough investigation of the Holcomb claim before denying coverage, thereby leaving unresolved ambiguities in the pleadings which preclude a finding that Ohio Casualty had no duty to defend. In *Allstate Ins. Co. v. Novak, supra*, we recognized that a liability insurer's duty to defend could arise either from the factual allegations of a pleading filed against the insured or from information derived from other sources including its own investigation. See, also, *Neff Towing Serv. v. United States Fire Ins. Co., supra*; *Mapes Indus. v. United States F. & G. Co., supra*. We have acknowledged that if an insurer must look beyond the pleadings in determining whether it is obligated to accept a tender of defense by an insured, so too must a court consider any relevant evidence outside the pleadings in resolving the legal issue of whether a duty to defend exists. See *Neff Towing Serv. v. United States Fire Ins. Co., supra*. For example, in *Mapes Indus.*, the policy in question provided coverage for "sudden and accidental" injury to certain property. We concluded that the insurer had no duty to defend because neither the claimant's pleadings nor the additional information furnished by the insured established or permitted an inference that damage resulted from a sudden and accidental event.

As the district court noted, in this case, "we have the benefit of a completed set of facts in the underlying Holcomb litigation." This case is thus factually distinguishable from *Allstate Ins. Co. v. Novak, supra*, in which the underlying action against the insured was still pending at the time the declaratory judgment action to determine coverage was decided. In the circumstances of the instant case, we agree with the reasoning of the district court that an insurer's incomplete investigation, without more, does not establish that it had a duty to defend a concluded lawsuit against its insured. Rather, it must be shown that a more thorough investigation would have disclosed facts which would establish the existence of the duty. The record made by the parties on their cross-motions for summary judgment discloses no

facts outside the pleadings which would bear on the issue of whether Ohio Casualty had a duty to defend Peterson in the now-completed Holcomb litigation, and we cannot assume that a more comprehensive investigation by Ohio Casualty would have disclosed any such facts. We are left with the pleadings filed in the underlying lawsuit, from which the parties agree that the coverage issue can be resolved.

### (c) Resolution

In arguing that Holcomb's claim against Peterson fell outside the business pursuits exclusions, the Petersons focus on allegations that Peterson's wrongful conduct "was designed to enrich himself personally" and that he acted "both in his individual capacity and on behalf of Anesthesia West." These allegations, contained in one paragraph of Holcomb's pleading, must be read in context with the other 67 paragraphs incorporated by reference in the defamation claim against Peterson. Summarized, Holcomb alleged that for approximately 20 years, he and Peterson practiced medicine together within the structure of Anesthesia West, which had an "exclusive contractual relationship with Methodist Hospital," precluding the hospital from utilizing the services of anesthesiologists not associated with Anesthesia West. Holcomb alleged that beginning in 1997, Peterson and other employees of Anesthesia West, acting in combination with other unidentified individuals and entities, embarked upon a course of conduct designed to improperly terminate Holcomb's association with Anesthesia West, culminating in the termination of Holcomb's employment agreement in November 1998 and the resulting termination of his staff privileges at Methodist Hospital. Holcomb further alleged on information and belief that Peterson and others "desired to remove Dr. Holcomb for financial reasons, to personally enrich themselves, and to reduce Anesthesia West's overhead by replacing him with a younger, less-experienced and less-expensive physician." Holcomb alleged that this course of conduct included the making of false, misleading, and derogatory statements about his professional competence and character, including "inappropriate conduct regarding certain employees." Holcomb alleged that such false and misleading statements were "designed to provide a factual predicate" for terminating

association with Anesthesia West, "thus significantly benefiting Anesthesia West and Peterson financially." Holcomb alleged that such conduct was defamatory and interfered with his existing and prospective business relationships. He further alleged that he had not been paid compensation due from Anesthesia West.

Read together, these allegations clearly assert a claim arising out of Peterson's professional medical practice and thus fall within the business pursuits exclusions. Simply put, Holcomb alleged that Peterson defamed him as a part of a deliberate course of conduct designed to exclude him from their long-standing business relationship. Whether Peterson is alleged to have acted at the behest of the professional corporation or independently does not alter the essential nature or purpose of his alleged conduct. The allegation that Peterson was motivated by personal gain to be derived by Holcomb's ouster from the professional corporation and replacement with a "younger, less-experienced and less-expensive physician" merely underscores the fact that the dispute arose from a business pursuit. The allegations and claims against Peterson contained in Holcomb's pleadings fall squarely within the policy exclusions, and in the absence of any other facts which would support an inference of coverage, we conclude that Ohio Casualty had no duty to defend or indemnify Peterson with respect to the claims asserted against him in the Holcomb lawsuit.

## V. CONCLUSION

For the reasons discussed, we conclude that the district court did not err in granting Ohio Casualty's motion for summary judgment and denying that of the Petersons, based upon its conclusion that as a matter of law, Ohio Casualty owed no duty under either of its policies to defend or indemnify the Petersons for claims asserted against Peterson in the Holcomb litigation.

AFFIRMED.

HEAVICAN, C.J., not participating.