275 Neb. 455
DOROTHY CAGUIOA, INDIVIDUALLY AND AS SPECIAL ADMINISTRATOR OF THE ESTATE OF NICOSIO CAGUIOA, DECEASED, AND AS GUARDIAN OF JADE CAGUIOA, A MINOR, APPELLANT,
v.
THOMAS FELLMAN AND MARTIN MEYERS, DOING BUSINESS AS FELLMAN MEYERS BOAT VENTURES, APPELLEES.
No. S-06-1055.
Supreme Court of Nebraska.
Filed April 18, 2008.
Joseph B. Muller and Ronald J. Palagi, of Law Offices of Ronald J. Palagi, P.C., L.L.O., for appellant.
Dan H. Ketcham and Meredith J. Morgans, of Engles, Ketcham, Olson & Keith, P.C., for appellees.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.
WRIGHT, J.

NATURE OF CASE
Nicosio Caguioa (Caguioa) drowned in Lake Powell, Utah. His widow, Dorothy Caguioa (Plaintiff), brought suit against the owners of the houseboat upon which Caguioa was a guest. The trial court granted the defendants' motion for summary judgment. It concluded that the record did not demonstrate the defendants were negligent in their operation of the houseboat and that there was no factual dispute as to any wanton negligence on the part of the defendants.

SCOPE OF REVIEW
[1] In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. Peterson v. Ohio Casualty Group, 272 Neb. 700, 724 N.W.2d 765 (2006).
[2] In determining the admissibility of evidence, the exercise of judicial discretion is implicit in determinations of relevancy and admissibility, and the trial court's decision will not be reversed absent an abuse of discretion. Streeks v. Diamond Hill Farms, 258 Neb. 581, 605 N.W.2d 110 (2000).

FACTS
Thomas Fellman and Martin Meyers (collectively the defendants) invited Caguioa to Lake Powell to spend time on their houseboat. Caguioa accepted the invitation and flew to Lake Powell to meet the defendants.
On August 20, 2001, while on the defendants' houseboat, Caguioa decided to go for a swim and jumped off the houseboat into the water. He was not wearing a lifejacket, nor did he have any flotation device. Meyers, who was steering the houseboat, saw Caguioa swimming in the water immediately after he jumped.
Meyers stated that he allowed the houseboat to drift the "length of a football field" or more from Caguioa. Meyers then started the houseboat and went back to get Caguioa. When Meyers got within approximately 50 feet of Caguioa, he turned off the engine, and Caguioa started to swim toward the left side of the houseboat. Meyers lost sight of Caguioa but stated that a passenger saw Caguioa approach the side of the houseboat and reach up. However, it was not possible to climb onto the houseboat at that location.
As Meyers came down from the helm, he saw Caguioa not more than 10 feet from the right side of the houseboat. Caguioa was looking at Meyers but did not say anything. Caguioa then went under the water, bobbed back up, raised his right arm, and went straight down into the water. Meyers screamed, "Nick's in trouble."
One passenger jumped into the water without a lifejacket. Another passenger retrieved snorkel gear from the back of the houseboat. Meyers radioed the National Park Service and stated that he had a man overboard. Efforts to rescue Caguioa were unsuccessful, and he drowned in the lake.
Plaintiff sued the defendants, alleging general acts of negligence and a cause of action based upon 46 U.S.C. app. § 688 (2000) (now codified at 46 U.S.C.A. § 30104 (West 2006)), commonly known as the Jones Act. The Douglas County District Court granted summary judgment in favor of the defendants, and Plaintiff appeals.

ASSIGNMENTS OF ERROR
Plaintiff assigns, restated, that the trial court erred (1) in granting the defendants' motion for summary judgment, because the court applied the wrong standard of care and the evidence showed a genuine issue of material fact, and (2) in excluding certain experts' affidavits regarding the negligence of the defendants.

ANALYSIS
[3] Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. Peterson v. Ohio Casualty Group, 272 Neb. 700, 724 N.W.2d 765 (2006).
The trial court stated that the defendants' main basis for their motion for summary judgment was that the action was brought exclusively under the Jones Act, a type of workers' compensation claim for seamen. Under the Jones Act, the duty is to provide employed seamen with safe and seaworthy conditions. In order for an action to be brought under the Jones Act, the plaintiff must show that he was employed by the defendant as a seaman. Second, the plaintiff must show that his injury occurred during the course of his employment.
In their motion for summary judgment, the defendants claimed Caguioa was not an employee under the Jones Act and was not injured in the course of his employment. The trial court found that the evidence presented by the defendants established that Caguioa was not a seaman and was merely a guest on the houseboat, not a chef hired to prepare meals for the other passengers. This evidence was not controverted by Plaintiff, and to the extent that the action sought recovery based on the Jones Act, the defendants' motion for summary judgment was sustained.
The parties do not contest this issue, and it is not assigned as error on appeal. Therefore, the trial court's granting of summary judgment as to the action brought under the Jones Act is affirmed.
The trial court also found that there were general allegations of wrongful death and negligence in addition to the claim raised under the Jones Act. The defendants argued that even if Plaintiff's claim was based on general negligence, there was no evidence of negligence on the part of the defendants.
The trial court analyzed the cause of action as if it were a claim based on premises liability. It relied upon Alexander v. Warehouse, 253 Neb. 153, 568 N.W.2d 892 (1997), in which the plaintiff was injured when he dove off a diving board and struck his head on the bottom of a swimming pool. In Alexander, the plaintiff was visiting residents of the apartment complex when the accident occurred. Because the plaintiff was a social guest, he was therefore considered a licensee. Under the law in effect at that time, an owner or occupant of a premises owed only the duty to refrain from injuring a licensee by willful or wanton negligence.
Alexander is inapplicable for two reasons: In the case at bar, Plaintiff's claim is not based upon premises liability, and even if it were, the duty owed is that of reasonable care. In Heins v. Webster County, 250 Neb. 750, 552 N.W.2d 51 (1996), we abrogated the distinction between invitees and licensees and held that owners and occupiers of land owe a general duty of reasonable care to all lawful entrants.
The trial court found that Caguioa was a guest and voluntarily left the houseboat to swim. There was evidence that Caguioa could swim, that he knew where the ladders and safety equipment were located, and that the houseboat was in good operating condition. Based on these facts, the court concluded there was no evidence in the record to indicate that the defendants were negligent in the operation of the houseboat. It concluded that there was no evidence as to any wanton negligence or designed injury on the part of the defendants.
We first address the standard of care to be applied in this negligence action. Generally, the owners and operators of boats and vessels have a duty to operate the boat in a careful and prudent manner. None of the parties have alleged that the law of the state where the accident occurred is different than the law of Nebraska. In the absence of such a pleading, we conclude that the law of Utah is the same as that of Nebraska. "No person shall operate any motorboat or vessel . . . in a .. . negligent manner so as to endanger the life, limb, or property of any person." Neb. Rev. Stat. § 37-1254 (Reissue 2004).
[4] In Reed v. Reed, 182 Neb. 136, 153 N.W.2d 356 (1967), we recognized the duty of ordinary care in the operation of a vessel and a cause of action for negligently failing to observe such ordinary care. Ordinary negligence is defined as the doing of something that a reasonably careful person would not do under similar circumstances or the failing to do something that a reasonably careful person would do under similar circumstances. Drake v. Drake, 260 Neb. 530, 618 N.W.2d 650 (2000).
[5] In order to prevail in a negligence action, a plaintiff must establish the defendant's duty to protect the plaintiff from injury, a failure to discharge that duty, and damages proximately caused by the failure to discharge that duty. National Am. Ins. Co. v. Constructors Bonding Co., 272 Neb. 169, 719 N.W.2d 297 (2006). In order to be granted summary judgment, a defendant must show that one of the required elements of a plaintiff's case cannot be established. In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. Peterson v. Ohio Casualty Group, 272 Neb. 700, 724 N.W.2d 765 (2006).
In the case at bar, the evidence presented on the motion for summary judgment created a genuine issue of material fact as to whether the defendants' conduct breached their duty of ordinary care. The defendants allowed their houseboat to drift over 100 yards from Caguioa. They knew he did not have a lifejacket or flotation device with him. There was also evidence that the houseboat may have run over Caguioa. Thus, summary judgment was not proper.
In addition, the trial court erroneously excluded the affidavits of Caguioa's expert witnesses. The affidavit of David Smith, Ph.D., averred that he was a retired commander from the U.S. Coast Guard. He graduated from the U.S. Coast Guard Academy in 1960 with a bachelor of science degree in naval science. Smith had 21 years of experience as a U.S. Coast Guard officer with assignments including "Chief of the Boating Safety Division, Second Coast Guard District, St. Louis," Missouri. He had been a member of the "National Water Safety Congress, Recreation and Parks Association, and the Safe Boating Council."
Based on his education, training, skills, and experience and his review of the National Park Service's incident report and witness statements regarding the drowning, Smith stated that Meyers was negligent in his operation of the houseboat on Lake Powell in the following particulars: in allowing the houseboat to drift away from Caguioa, in failing to safely maneuver the houseboat back to retrieve Caguioa, and in failing to be properly trained and prepared in rescue operations or have someone present onboard who was properly trained in rescue operations. Smith opined that the above factors led to the death of Caguioa. Smith set forth his conclusions to a reasonable degree of certainty in his area of expertise. A similar affidavit was filed by Capt. Eugene Hickey, who had also graduated from the U.S. Coast Guard Academy with a bachelor of science degree in engineering.
[6] Four preliminary questions must be answered in order to determine whether an expert's testimony is admissible: (1) whether the witness qualifies as an expert pursuant to Neb. Evid. R. 702, Neb. Rev. Stat. § 27-702 (Reissue 1995); (2) whether the expert's testimony is relevant; (3) whether the expert's testimony will assist the trier of fact to understand the evidence or determine a controverted factual issue; and (4) whether the expert's testimony, even though relevant and admissible, should be excluded in light of Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 1995), because its probative value is substantially outweighed by the danger of unfair prejudice or other considerations. City of Lincoln v. Realty Trust Group, 270 Neb. 587, 705 N.W.2d 432 (2005); State v. Duncan, 265 Neb. 406, 657 N.W.2d 620 (2003).
In this case, the trial court excluded the affidavits of both of Caguioa's expert witnesses because the
resumes and curriculum vitae presented for these witnesses do not indicate that they are experts in the area of determining the negligence of a driver of a recreational boat, they do not indicate how their testimony is relevant, and, they do not indicate how they arrived at their opinions or state the basis for their opinions.
The resumes and curricula vitae of Caguioa's witnesses established that they were qualified as experts in matters involving the operation and use of pleasure boats. Both graduated from the U.S. Coast Guard Academy, and each had extensive experience with boats, including more than 20 years of experience as officers of the U.S. Coast Guard.
The affidavits were offered to show the experts' opinions that the defendants' conduct was negligent because it did not conform to a standard of ordinary care. Their affidavits were relevant and were sufficient to establish the foundation for their opinions. The affidavits were not unfairly prejudicial.

CONCLUSION
We affirm the judgment of the trial court as to Plaintiff's claim based on the Jones Act. However, for the reasons set forth above, we conclude that the trial court erred in granting the defendants' motion for summary judgment based on a cause of action for negligence. We reverse the judgment as to Plaintiff's claims based on the alleged negligence of the defendants, and we remand the cause for further proceedings.
AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
MILLER-LERMAN, J., not participating.