IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


GUTCHEWSKY V. WESTSIDE COMMUNITY SCHOOLS


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


CATHLEEN GUTCHEWSKY, APPELLANT,

V.

WESTSIDE COMMUNITY SCHOOLS, A POLITICAL SUBDIVISION, APPELLEE.


Filed March 17, 2015.    No. A-14-446.


Appeal from the District Court for Douglas County: TIMOTHY P. BURNS, Judge. Affirmed.

Steven H. Howard, of Dowd, Howard & Corrigan, L.L.C., for appellant.

Daniel J. Welch, of Welch Law Firm, P.C., for appellee.


INBODY, PIRTLE, and BISHOP, Judges.

PIRLTE, Judge.

INTRODUCTION

Cathleen Gutchewsky brought a negligence action in the district court for Douglas County against Westside Community Schools under the Political Subdivisions Tort Claims Act for injuries she sustained while on property controlled and maintained by Westside. The trial court entered judgment in favor of Westside and dismissed Gutchewsky's action. Based on the reasons that follow, we affirm.

BACKGROUND

On August 22, 2009, Gutchewsky went to Westside High School to pick up her son Dylan from "Saturday school", a school-imposed sanction for disciplinary reasons. Westside had

just started the school year the week before and Dylan was a freshman student. Saturday was not a regular school day for students, and only a few students were at "Saturday school."

Gutchewsky met Dylan inside the school because she wanted to find out where to go to obtain a school activity card. Gutchewsky and Dylan walked around looking for the location, but could not find it. As they were walking around, they walked down a hallway that led outside and directly into the school's baseball facility. Dylan wanted to look at the facility, as he hoped to play baseball for Westside High School, so the two exited the double doors at the end of the hallway by pushing on the "crash bar" and went outside. The double doors, unbeknownst to them, locked behind them. After looking at the field, they tried to reenter the school and discovered that the doors were locked from the outside.

Gutchewsky and Dylan knocked on the doors and on windows of the school, trying to get someone's attention, but no one answered. The baseball facility was enclosed by a fence, with two entrance/exit gates, one on the east side and one on the west side. Gutchewsky and Dylan checked both gates and they were both padlocked closed. The two decided that the only way out was to climb over the fence, which was 6 feet high. Dylan went over the fence first, without a problem. When Gutchewsky attempted to climb over the fence, she had a hard time getting down on the other side because she was wearing flip-flops. She decided to jump when she was part way down and as a result, she was injured. She suffered a broken leg and shattered her knee cap, requiring surgery. As a result of her injury, she was off work for months and at the time of trial was still experiencing pain, discomfort, and loss of full range of motion of her leg and knee.

On April 20, 2011, Gutchewsky filed a complaint against Westside under the Political Subdivisions Tort Claims Act alleging that her injuries were proximately caused by Westside's negligence. Westside filed an answer, in which it raised several affirmative defenses.

A bench trial was held in January 2014. Timothy Cox, the building service manager for Westside High School, testified that the east and west entrances/exits to the baseball complex are locked when school is not session. He testified that Westside locks the gates for security reasons and to protect the field. The gates are unlocked during normal school hours, and the west entrance is typically unlocked when the baseball facility is in use. Cox testified that the double doors that Gutchewsky and Dylan exited are almost always locked from the outside, including when school is in session. This is to ensure the safety of the students and faculty. Cox testified that the doors are occasionally unlocked or propped open during baseball games. MaryAnne Ricketts, Westside High School's principal, also testified that the doors are sometimes unlocked during baseball games.

It was undisputed that there were no signs posted near the double doors inside the school to let persons exiting know that the doors were only an exit and there was no reentry access. Cox and Ricketts both testified that security and safety would not be adversely affected by having a sign posted indicating that there was no reentry or by having an intercom system on the outside of the building. Gutchewsky testified that because the doors were unlocked to walk out of the school, she assumed they would be unlocked to go back in.

Cox also testified that he visited other high school baseball facilities in the Omaha area. He found that other baseball fields were surrounded by six-foot fences and have gates that are locked with padlocks when the field is not in use, just like Westside High School. However,

none of the facilities were accessible directly from the school or from any door that locked behind them. He testified that there was no way of getting into these facilities and becoming trapped inside. Gutchewsky also testified that she has been to a lot of baseball facilities over the years when Dylan was playing baseball and she did not recall any other school having the baseball field directly accessible from the school building.

The evidence showed that after Gutchewsky and Dylan realized they were locked inside the baseball facility, they knocked on the doors and windows of the school trying to get someone's attention, but were unsuccessful. There was testimony that football practice was going on at the football field, which is located approximately 100 feet from the baseball facility. There is a parking lot in between the two facilities. Gutchewsky and Dylan did not try to get anyone's attention on the football field because they did not know if they would be heard and did not know if anyone would have a key to unlock the gate or doors. Dylan also had his cell phone with him, but they did not try to call anyone to help them. After 10 to 20 minutes of being locked inside the facility, Gutchewsky and Dylan decided to climb the fence. Gutchewsky testified that she was hesitant about doing so because she thought it could be dangerous and was worried about getting injured, especially since she was wearing flip-flops. Dylan testified that he had to talk Gutchewsky into climbing over the fence because she was worried about getting hurt. Gutchewsky and Dylan both testified that Dylan climbed over the fence first, but he did not go around to the front of the school to see if the main entrance was still open so he could go in and open the double doors for Gutchewsky. Instead, Gutchewsky attempted to climb over the fence and was injured.

Gutchewsky and Gutchewsky's mother both testified that after the date of Gutchewsky's injury, they observed players climbing over the fence surrounding the baseball facility to shag baseballs and other people climbing over the fence when leaving games. The people climbing over the fence after games were presumably doing so because they were parked in the lot on the east side and only the west exit was open.

Ronald Wayne Garrison testified on behalf of Gutchewsky as a school safety expert. He testified that a school safety expert primarily focuses on issues of safety, security, and supervision at schools and college campuses. Garrison has a master's degree in school safety leadership which focused on ways to eliminate fear and violence from classrooms so children can learn. Garrison had consulted with numerous litigants involving school safety issues and had consulted directly with schools on issues of school safety. Garrison admitted his education and work experience had not been focused on facility security and proper ingress and egress, as in the present case.

Garrison testified that in his opinion, Westside fell below the standard of care in Nebraska because it did not provide any signs or warning that the double doors at issue were an exit only, and once outside, it did it provide any way to leave the baseball field in a safe manner. He testified that in the absence of a sign or warning, it was foreseeable that someone would exit the school and become trapped in the baseball facility, and would climb over the fence to get out.

Garrison acknowledged that he never visited Westside High School or other high schools in the Omaha area or their baseball facilities. He did review photographs of other baseball facilities in the Omaha area, which he testified helped him establish the standard of care in the

area. However, none of these facilities were adjacent or directly accessible from the school as Westside's facility was. He also testified that he did not know how many schools in the Omaha area or in Nebraska had signs or warnings above doors that were for exiting only. Garrison also admitted that he had not found and could not point to any outside research or publications to validate his opinion that Westside fell below the standard of care. He stated that his opinions were based on his expertise and training.

Following trial, the trial court entered an order on April 18, 2014, finding in favor of Westside and dismissing Gutchewsky's complaint. The court found "there is no evidence to conclude Westside should have realized or foresaw that, one, a lawful visitor on a non-school day would exit the double door and become trapped in the fashion [Gutchewsky] and her son were on Saturday, August 22, 2009; and, two, be injured trying to scale the fence surrounding the baseball field."

## ASSIGNMENTS OF ERROR

Gutchewsky assigns that the trial court erred in (1) failing to determine that becoming trapped in the baseball facility was foreseeable, (2) failing to find that the risk of being trapped in the baseball facility constituted an unreasonable risk of harm to Gutchewsky as a lawful visitor, (3) failing to determine that Westside owed Gutchewsky a legal duty to either warn her or to provide a safe means of escape from the baseball complex, and (4) failing to properly consider evidence of other high school baseball facilities in analyzing whether Westside had a duty and/or breached a standard of care.

## STANDARD OF REVIEW

In actions brought under the Political Subdivisions Tort Claims Act, an appellate court will not disturb the factual findings of the trial court unless they are clearly wrong. *Blaser v. County of Madison*, 285 Neb. 290, 826 N.W.2d 554, (2013).

The question whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular situation. *Blaser v. County of Madison, supra*. When reviewing a question of law, an appellate court resolves the question independently of the conclusion reached by the trial court. *Id.*

Whether a defendant breaches a duty is a question of fact for the fact finder, which an appellate court reviews for clear error. *Blaser v. County of Madison, supra*.

When determining the sufficiency of the evidence to sustain the trial court's judgment, a court must consider the evidence in the light most favorable to the successful party; every controverted fact must be resolved in favor of such party, and the successful party is entitled to the benefit of every inference that can be deduced from the evidence. *Downey v. Western Community College Area*, 282 Neb. 970, 808 N.W.2d 839 (2012).

## ANALYSIS

In her first three assignments of error, Gutchewsky argues that the trial court erred in failing to determine that becoming trapped in the baseball complex was foreseeable; failing to find that the risk of being trapped in the baseball complex constituted an unreasonable risk of

harm to Gutchewsky as a lawful visitor; and failing to determine that Westside owed Gutchewsky a legal duty to either warn her or to provide a safe means of escape from the baseball complex. These assignments of error are related and will be discussed together.

Gutchewsky's negligence action is brought under the Political Subdivisions Tort Claims Act (PSTCA), §§ 13-901 to 13-928 (Reissue 2012). Subject to certain exceptions, in all suits brought under the PSTCA, the political subdivision is liable in the same manner and to the same extent as a private individual. See *Connelly v. City of Omaha*, 284 Neb. 131, 816 N.W.2d 742 (2012). Thus, a negligence action brought under the PSTCA has the same elements as a negligence action against an individual. See *id.*

In order to recover in a negligence action, a plaintiff must show a legal duty owed by the defendant to the plaintiff, a breach of such duty, causation, and damages. *Blaser v. County of Madison, supra*. The question whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular situation. *Id.* But it is for the fact finder to determine, on the facts of each individual case, whether or not the evidence establishes a breach of that duty. *Id.*

Gutchewsky's negligence action is a premises liability case because Westside owned and maintained the school and baseball facility where the injury occurred, and no one disputes that Gutchewsky was a lawful visitor when the accident occurred. See *Connelly v. City of Omaha, supra*. Therefore, Westside's duty to Gutchewsky was the duty that a possessor of property owes to a lawful visitor. Owners and occupiers of land owe a general duty of reasonable care to all lawful entrants. See *Caguioa v. Fellman*, 275 Neb. 455, 747 N.W.2d 623 (2008). As a general matter, the existence of a duty serves as a legal conclusion that an actor must exercise such degree of care as would be exercised by a reasonable person under the circumstances. *Blaser v. County of Madison, supra*.

The Nebraska Supreme Court has recognized that an owner or occupier is liable for injury to a lawful visitor resulting from a condition on the owner or occupier's premises if the lawful visitor proves:

> (1) the owner or occupier either created the condition, knew of the condition, or by the exercise of reasonable care would have discovered the condition; (2) the owner or occupier should have realized the condition involved an unreasonable risk of harm to the lawful visitor; (3) the owner or occupier should have expected that a lawful visitor such as the plaintiff either (a) would not discover or realize the danger or (b) would fail to protect himself or herself against the danger; (4) the owner or occupier failed to use reasonable care to protect the lawful visitor against the danger; and (5) the condition was a proximate cause of damage to the lawful visitor.

*Connelly v. City of Omaha, supra.*

The evidence in the present case showed that on the day that Gutchewsky was injured, her son had been attending "Saturday school" and when she went to pick him up, she went inside the school to help him find an activity card. The day in question was not a regular school day for students and only a few other students had attended "Saturday school." Gutchewsky testified that she saw the school principal with a few individuals in one of the hallways, but there was no one

else around in the building. There was also no evidence of any school activities or events going on inside the school.

There was testimony that the east and west gates that are part of the fencing around the baseball facility are always locked when school is not in session and when the facility is not being used. The gates are locked during these times for security reasons and to protect the facility. The evidence also showed that the double doors that Gutchewsky and Dylan used to exit the school and go into the baseball facility are almost always locked from the outside. These doors are locked for the safety of students and faculty.

There was no evidence that Westside had ever received any complaints or had any knowledge of any prior incidents where a lawful visitor became trapped like Gutchewsky. Although Gutchewsky testified that she had seen baseball players jumping over the fence to shag baseballs and other people climbing over the fence to take a short cut to their cars, these individuals were not trapped inside the facility. At least one of the gates was open at the time and the individuals were going over the fence for other reasons.

The evidence also showed that Gutchewsky had other options besides climbing over the fence to get out of the baseball facility. Gutchewsky and Dylan could have tried to get the attention of someone on the football field, they could have used Dylan's cell phone to call for help, or Dylan could have tried to reenter the school at the front entrance after he climbed over the fence, and opened the double doors for Gutchewsky.

Garrison, Gutchewsky's expert, testified that in his opinion Westside breached its duty of care because it did not provide Gutchewsky with any warning that the double doors were an exit only and it did not provide any way to leave the baseball field in a safe manner. He testified that in the absence of a sign or warning, it was foreseeable that someone would exit the school and become trapped in the baseball facility, and would climb over the fence to get out. However, Garrison never visited Westside or any high school or baseball facility in Nebraska. There was no evidence of other high school baseball facilities in the Omaha area that were directly accessible from doors in the school, as Westside was. Further, Garrison could not point to any literature or research to support his opinion.

After reviewing the evidence presented and applying the principles stated above, the trial court stated:

> I cannot find that Westside should have realized the exiting of the double doors[s] in this case during a non-regular school day involved an unreasonable risk of harm to [Gutchewsky] or any other lawful visitor. Westside's action in locking the gates when school is not in regular session or when the baseball field is not in use are completely justified for security reasons and to protect the field. There is no evidence that would lead me to conclude that the possibility of someone being stuck in the situation [Gutchewsky] found herself should have been obvious or apparent to Westside.

The trial court concluded "there [was] no evidence to conclude Westside should have realized or foresaw that, one, a lawful visitor on a non-school day would exit the double door and become trapped in the fashion [Gutchewsky] and her son were on Saturday, August 22, 2009; and, two, be injured trying to scale the fence surrounding the baseball field."

Simply put, the court found that Westside had a duty of reasonable care to Gutchewsky as a lawful visitor, but it did not breach that duty because there was no evidence that becoming trapped inside the baseball facility was foreseeable or that Westside should have realized that exiting the double doors during a non-regular school day involved an unreasonable risk of harm to Gutchewsky or any other lawful visitor. Ultimately, whether a defendant breaches a duty is a question of fact for the fact finder, which an appellate court reviews for clear error. See *Blaser v. County of Madison, supra*. We find no clear error in the court's finding that Westside did not breach its duty to Gutchewsky. Because we conclude that exiting the double doors and becoming trapped inside the facility was not foreseeable and did not involve an unreasonable risk of harm, there is no merit to Gutchewsky's argument that Westside owed Gutchewsky a legal duty to either warn her or to provide a safe means of escape from the baseball complex. Gutchewsky's first three assignments of error are without merit.

Gutchewsky next argues that the trial court erred in failing to properly consider evidence of other high school baseball facilities in analyzing whether Westside had a duty and/or breached a standard of care. The trial court found that Westside's baseball facility was unique in that it is adjacent and accessible from exiting the school. It stated that the evidence of other high school baseball fields in the area were not set up the way that Westside was and were not helpful in the analysis of whether Westside breached the standard of care.

We agree that the evidence of other baseball facilities was not helpful in determining whether Westside breached the standard of care. Although the other facilities locked the gates around the facility with padlocks when not in use, as Westside did, they did not provide access to the baseball facility directly from the school or provide access through an entrance that was not also an exit. In the other baseball fields, if an individual could get in through an entrance, he/she could get out. That was not the setup at Westside High School, making the evidence of other baseball facilities incomparable. This assignment of error is without merit.

Gutchewsky also argues in her brief that the trial court erred in not accepting Garrison's expert opinions. The trial court stated that it found Garrison's testimony unpersuasive. However, Gutchewsky did not assign this as error. To be considered by an appellate court, alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *Rodehorst v. City of Norfolk Board of Adjustment*, 287 Neb. 779, 844 N.W.2d 755 (2014). Because Gutchewsky did not assign and argue an alleged error in regard to Garrison's expert opinions, we will not consider her argument.

CONCLUSION

We conclude that the trial court did not err in finding that Westside did not breach its duty to Gutchewsky as a lawful visitor because Gutchewsky becoming trapped in the baseball facility was not foreseeable and did not involve an unreasonable risk of harm to Gutchewsky or any other lawful visitor. Further, the trial court did not err in failing to consider evidence of other high school baseball facilities in analyzing whether Westside had a duty and/or breached a standard of care. Accordingly, the judgment of the trial court is affirmed.

AFFIRMED.