750 N.W.2d 701 (2008)
275 Neb. 933
CASS COUNTY BANK, a Nebraska banking corporation, appellee,
v.
DANA PARTNERSHIP, a Nebraska general partnership, et al., appellants.
No. S-07-431.
Supreme Court of Nebraska.
June 20, 2008.
*702 Brian T. McKernan, of McGrath, North, Mullin & Kratz, P.C., L.L.O., Omaha, for appellants.
*703 Steven J. Woolley and Alan E. Pedersen, of McGill, Gotsdiner, Workman & Lepp, P.C., L.L.O., and Steven J. Riekes, of Marks, Clare & Richards, L.L.C., Omaha, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
GERRARD, J.

NATURE OF CASE
In this case, Cass County Bank (Bank) seeks reimbursement from the appellants for money it paid to Upland Construction Company (Upland) pursuant to a letter of credit. The Bank contends that the appellants are liable for the Bank's extension and payment of the letter of credit because they promised to sign a promissory note guaranteeing the letter. The appellants claim, in essence, that they are not liable because they never signed the note. The district court found in favor of the Bank. The primary issues presented in this appeal are whether the Bank was authorized to issue the letter of credit and whether the Bank is entitled to reimbursement from the appellants.

FACTS
Anil K. Agarwal and Sudha Agarwal, husband and wife, are the parents of three children, one of whom is Arun Agarwal. At all times relevant to this case, the children were co-owners of Dana Partnership, which in turn owns 90 percent of Reliant Construction, L.L.C. (Reliant). Sudha was Dana Partnership's managing agent until 2001, when the partnership agreement was amended and Arun became the managing agent. Arun is also Reliant's managing agent.
Although Sudha was no longer Dana Partnership's managing agent, she remained involved with the operation of the company. Douglas Rasmussen, vice president of the Bank and the loan officer responsible for overseeing loans made to Dana Partnership, testified that Arun had directed Rasmussen to speak to Sudha regarding business dealings that involved Dana Partnership.
In 2003 and 2004, the Bank made various loans and issued multiple letters of credit to Dana Partnership, all of which were signed by Arun in his capacity as Dana Partnership's managing agent. Anil and Sudha cosigned on a number of these loans. The record reflects that, with regard to the loans and letters of credit issued by the Bank at Dana Partnership's request, it was the Bank's general practice to take the loan documents to Dana Partnership's office, where the documents would be signed. And the Bank would not advance any money or issue a letter of credit without first acquiring the necessary signatures.
On June 6, 2003, Reliant entered into a subcontract agreement with Upland to perform roofing work on a project to build a waste disposal facility. Pursuant to the subcontract agreement, Reliant was required to post a performance bond. In place of a performance bond, however, Upland agreed to accept a letter of credit from Reliant, listing Upland as the beneficiary.
On August 8, 2003, the Bank, at Arun's request, issued irrevocable standby letter of credit No. 41558 (original letter of credit), naming Upland as the beneficiary. The amount of the original letter of credit was $90,228 and had a stated expiration date of June 1, 2004. June 1 was chosen as the expiration date because Arun and Upland believed that Reliant's roofing job would be completed by this date. In conjunction with the issuance of the original *704 letter of credit, Dana Partnership, as borrower, and Anil and Sudha, as cosigners, signed and gave the Bank commercial promissory note No. 41558 dated August 8, 2003. This commercial promissory note was for the same amount as the original letter of credit, $90,228, and had a maturity date of June 1, 2004, which corresponded with the expiration date on the original letter of credit.
The commercial promissory note provided that it was "further governed by the Commercial Loan Agreement," which was signed by Anil and Sudha and dated August 8, 2003. The commercial loan agreement, under the section entitled "ADDITIONAL TERMS," provided, in bold and capital letters, that
oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect you (borrower) and us (lender) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it. By signing this agreement, the parties affirm that no unwritten oral agreement exists between them.
Anil and Sudha also signed, on August 8, a personal guaranty for "each and every debt, of every type and description, that [Dana Partnership] may now or at any time in the future owe [the Bank]."
In May 2004, it became apparent that Reliant would not be able to complete the contracted work before the original letter of credit expired on June 1. As a result, Paul Sum, Upland's owner and president, contacted Arun and told Arun that the expiration date on the original letter of credit needed to be extended. Sum testified that he specifically instructed Arun to extend the expiration date on the original letter of credit to October 31, because Reliant should have been able to complete the project by that date. According to Sum, Arun assured him that he would get a new letter of credit with an expiration date of October 31.
Following his conversation with Sum, Arun attempted to contact Rasmussen at the Bank. However, Arun was not able to reach Rasmussen personally, so Arun left Rasmussen two or three voice mail messages. Rasmussen testified that Arun indicated in his messages that the original letter of credit was expiring and that Reliant needed a new letter of credit because the project had been delayed. According to Rasmussen, Arun also indicated that he would be going out of town. Rasmussen testified that, due to pressing matters at the Bank, he was unable to return Arun's calls.
Because of the delay in hearing back from Rasmussen, Arun instructed Sudha to try and contact Rasmussen, which she did. Rasmussen had conversations with Sudha on two or three occasions toward the later part of May 2004. Rasmussen testified that he and Sudha discussed the expiration date of the original letter of credit and that Sudha was "anxious" because the expiration date was approaching. Rasmussen testified that Sudha instructed him to contact Sum in order to determine how long the project was going to be delayed and to determine how long the original letter of credit needed to be extended. Sudha, however, testified that she did not discuss extending the original letter of credit with Rasmussen. She claimed instead that her conversation with Rasmussen was merely to inform Rasmussen that Arun was trying to contact him.
During the final week of May 2004, Rasmussen contacted Sum, who informed Rasmussen *705 that the original letter of credit should be extended to October 31. Rasmussen testified that on May 27, he called Sudha and told her that, after talking with Sum, it had been determined that the original letter of credit's expiration date should be extended to October 31. Rasmussen testified that Sudha indicated to him that "it needed to be done" because the original letter of credit was expiring. According to Rasmussen, Sudha instructed him to send the new letter of credit to Upland before the original letter of credit expired on June 1.
Rasmussen testified that he told Sudha, on May 27, 2004, that the Bank would need the appropriate signatures on an amendment to the promissory note that would correspond with the issuance of the new letter of credit. Rasmussen testified that Sudha told him to "[g]o ahead, and that she would see that it got signed." Rasmussen told Sudha that he was not going to be back in his office until June 1 and that he would prepare and mail the new loan documents to her on that day.
On May 27, 2004, after talking with Sudha, Rasmussen prepared irrevocable standby letter of credit No. 41558A (replacement letter of credit). This replacement letter of credit contained the same terms as the original letter of credit except that the expiration date on the replacement letter of credit had been extended to October 31. On the same day, Rasmussen faxed a copy of the replacement letter of credit to Sum and placed the original in the mail.
Rasmussen admitted that it was not his general practice to advance money to a Bank customer without first receiving a signature. Nevertheless, Rasmussen testified that he did so in this instance because the Bank "had a longstanding relationship with the Agarwals and they've always done what they said they would do." Rasmussen explained that the Bank was "doing a favor to a good loan customer" who was in "distress." Rasmussen testified that he would not have issued the replacement letter of credit without having received Sudha's verbal assurance that the amendment to the promissory note would be signed.
When he returned to work on June 1, 2004, Rasmussen prepared the amendment to the promissory note. The amendment was dated June 1, 2004; was for the same amount as the original promissory note, $90,228; and had a maturity date corresponding with the replacement letter of credit, October 31. Rasmussen testified that he mailed the amendment and a copy of the replacement letter of credit to Sudha on June 1.
"A few weeks" after Rasmussen mailed the loan documents to Sudha, Rasmussen realized that the amendment to the promissory note had not been signed and returned to the Bank. Rasmussen testified that he contacted both Sudha and Arun, each assured him that he or she would "look into it and get back to [him]," and neither one of them indicated that the amendment would not be signed. Both Arun and Sudha, however, claimed that they have never received an amendment or modification to the original letter of credit. Arun testified that the first time he realized that the original letter of credit had been amended or modified was not until the second week of August 2004.
During the summer of 2004, Upland apparently became dissatisfied with Reliant's work and, on various occasions, sent letters to Arun threatening to exercise its rights under the replacement letter of credit. On June 8, Sum faxed a letter to Arun in which Sum directed Arun "to complete the roof installation ... no later than Tuesday, June 15, 2004 or Upland will enforce all remedies against [Reliant] per *706 our subcontract agreement, including cashing in your Irrevocable Stand by Letter of Credit # 41558A at the ... Bank." Arun never questioned Upland's reference to the replacement letter of credit, nor did Arun contact the Bank or Upland and claim that the original letter of credit had already expired on June 1.
In another letter from Sum to Arun, dated June 25, 2004, Sum stated that "[b]ecause of [Reliant's] failure to perform we have held payments to protect our interests and at the present time we are seriously considering exercising our demand on your letter of credit with the ... Bank." On August 18, Sum faxed a letter to Arun, notifying him that "[a]s a result of [Reliant's] continued failure to perform Upland has no choice but to declare [Reliant] in default of [the] subcontract and replace [Arun's] firm."
The following day, Arun faxed a letter to Sum in which he discussed, among other things, the efforts Reliant was making toward completing the project and the estimated completion dates for certain tasks. At the close of the letter, Arun stated that "we hope that you [Upland] can hold your intention of accessing our Letter of Credit until next week when you will see progress towards our plan." Despite Arun's letter, Sum went to the Bank on August 19, 2004, and informed Rasmussen that Reliant was in default and that Upland was making a demand on the replacement letter of credit. Sum presented to Rasmussen the necessary documentation, including the replacement letter of credit. The Bank did not pay Sum the funds at that time.
Later that day, Arun faxed a letter to the Bank. In this letter, Arun claimed that Reliant had complied with each of Upland's requests. Arun stated that "our company [Reliant] had agreed to extend [Upland's] letter of credit till August 1, 2004, and we have never received a copy of that letter of credit extending any further from original date." Arun ended this letter by claiming that Reliant "never executed a subcontract agreement with Upland... on this project." Both Rasmussen and Sum testified that Arun's letter was the first time that they had ever heard of August 1, 2004, as being the expiration date. Arun acknowledged that this was the first time he had raised any concerns with regard to the expiration date on the replacement letter of credit.
On August 23, 2004, Reliant filed a complaint for a temporary restraining order and preliminary injunction in the Douglas County District Court, against Upland and the Bank. In its complaint, Reliant sought to prevent Upland from receiving and the Bank from paying any funds under the replacement letter of credit. In its complaint, Reliant made the following admission:
Letter of Credit No 41558 had an expiration date of June 1, 2004. Due to a number of circumstances beyond the control of the parties hereto, work [o]n the [Reliant] subcontract did not commence until January of this year. As such, it it [sic] became necessary to push back the above referenced completion date for same by several months. As a result Letter of Credit 41558 was replaced by Letter of Credit No 41558A, effective May 27, 2004, in the amount of $90, 2[2]8.00, with an expiration date of October 31, 2004. ...
The district court denied Reliant's request for a temporary restraining order and preliminary injunction. On August 24, as payment under the replacement letter of credit, the Bank issued a check to Upland in the amount of $90,228.
The Bank filed a complaint against Dana Partnership, Reliant, and Anil and Sudha (collectively appellants) after the appellants refused to reimburse the Bank for its *707 $90,228 payment to Upland. Following a bench trial, the court found that Dana Partnership, on behalf of Reliant, requested the expiration date on the original letter of credit be extended and that Dana Partnership was aware that an amendment to the promissory note would need to be signed. The court further determined, applying principles of promissory estoppel, that Sudha's "promise to complete the necessary loan documentation ... induced the [Bank] to issue the Replacement Letter of Credit, and the failure to enforce the... agreement to sign said documentation would act as an injustice in this case." Accordingly, the court entered judgment in favor of the Bank and against the appellants.

ASSIGNMENTS OF ERROR
The appellants contend, renumbered, that the district court erred in (1) finding that the original letter of credit had been validly extended, (2) applying promissory estoppel to modify the terms of the original letter of credit, (3) determining that a third-party beneficiary could modify the terms of a letter of credit that by its terms could not be modified, and (4) finding an implied contract.

STANDARD OF REVIEW
[1] Given the nature of the relief requested, this action sounds in equity.[1] In an appeal of an equitable action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided, where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.[2]

ANALYSIS

DANA PARTNERSHIP REQUESTED THAT ORIGINAL LETTER OF CREDIT BE EXTENDED AND PROMISED TO SIGN PROMISSORY NOTE
[2] The appellants contend that the district court erred in finding that they reached an agreement with the Bank to issue the replacement letter of credit and to sign the amendment to the promissory note. Although Arun's and Sudha's testimony differed in certain respects from that given by Rasmussen and Sum, the trial court, based on its observation and judgement, clearly gave greater weight to Rasmussen's and Sum's testimony. And in reaching our conclusion de novo, we consider the fact that the trial court saw and heard the witnesses and observed their demeanor while testifying, and we give significant weight to the trial court's judgement as to credibility.
We agree with the district court's factual finding. The various correspondence sent between Sum, Arun, and the Bank, and the complaint for a temporary restraining order and preliminary injunction filed by Reliance, supports Rasmussen's and Sum's versions of the facts. After the original letter of credit had expired on June 1, 2004, Sum sent multiple letters to Arun threatening to make a demand on the replacement letter of credit. Yet Arun never questioned Sum's references to the replacement letter of credit, nor did Arun contact the Bank or Sum and claim that the original letter of credit had already expired. Instead, in a letter faxed to Sum on August 19, Arun requested that Upland not exercise "our Letter of Credit until next week."
*708 Furthermore, in a letter faxed to the Bank on this same day, Arun expressly stated that Reliant "had agreed to extend [Upland's] letter of credit." And finally, in its complaint for a temporary restraining order and preliminary injunction against the Bank, Reliant admitted that "Letter of Credit 41558 was replaced by Letter of Credit No 41558A ... with an expiration date of October 31, 2004." Simply stated, in light of this evidence, and giving weight to the district court's evaluation of the witnesses' credibility, we agree with the district court and find that Sudha, on behalf of Dana Partnership, requested that the original letter of credit be extended, agreed to October 31, 2004, as the expiration date, and assured the Bank that the amendment to the promissory note would be signed.

PROMISSORY ESTOPPEL
[3] The appellants next argue that, even if Sudha asked the Bank to issue a replacement letter of credit and then promised to sign the corresponding amendment to the promissory note, this type of oral agreement is prohibited by the original promissory note and is therefore unenforceable. The provision in the original promissory note upon which the appellants rely provides that
oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect you (borrower) and us (lender) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it. By signing this agreement, the parties affirm that no unwritten oral agreement exists between them.
The Bank argues, however, that under the principles of promissory estoppel, the appellants cannot rely on the above provision as a way of avoiding liability in this case. We agree. In discussing a contractual provision similar to the one at issue in this case, we have held that "[i]t is well-established that the parties to a contract may avoid such a provision where ... the party claiming the benefit of the provision is estopped to rely on it."[3]
[4,5] Under the doctrine of promissory estoppel, a promise which the promisor should reasonably expect to induce action or forbearance is binding if injustice can be avoided only by enforcement of the promise.[4] Promissory estoppel requires that reliance be reasonable and foreseeable.[5] In the present case, given the particular circumstances and the appellants' conduct, we conclude that the appellants are estopped from relying on the contractual provision at issue as a defense to their liability.
The appellants claim, in essence, that the Bank's reliance on Sudha's promise that the amendment to the promissory note would be signed was neither reasonable nor foreseeable, because the original promissory note prohibited modification by oral agreement. The appellants also contend that the Bank's reliance was not reasonable or foreseeable, because the Bank's decision to issue the replacement letter of credit without first having the necessary *709 signatures on the amendment to the promissory note was contrary to the customary way in which the Bank and the appellants had interacted in the past.
Notwithstanding the parties' previous dealings and the language in the original promissory note, we are not persuaded by the appellants' argument. Sudha's promise did not form an oral agreement to modify the promissory note. It was a promise to sign a written modification. The Bank does not claim the promise modified the notethe Bank claims it was injured by its reliance on Sudha's promise to modify the note. We agree with the district court and find that, under the particular circumstances of this case, the Bank's reliance on Sudha's promise was both reasonable and foreseeable.
According to Rasmussen, Sudha assured him that the amendment to the promissory note corresponding to the replacement letter of credit would be signed and returned to the Bank. Although it was not the Bank's general practice to issue a letter of credit without first receiving a signature, Rasmussen testified that he did so in this instance because the Bank and the appellants had a longstanding relationship with each other and the appellants had "always done what they said they would do." Rasmussen explained that the Bank was assisting a good loan customer who was in "distress" and that he would not have issued the replacement letter of credit without first receiving Sudha's promise that the amendment to the promissory note would be signed. Accordingly, in direct reliance on Sudha's promise, the Bank issued the replacement letter of credit and shortly thereafter sent Sudha the amendment to the promissory note to be signed.
Given the circumstances under which the promise was madein particular, the short amount of time remaining with which to extend the original letter of credit before the original letter of credit expiredit was both reasonable and foreseeable that Sudha's promise would induce the Bank to act in reliance upon it. And to refuse to enforce Sudha's promise would work an injustice on the Bank. Accordingly, we conclude that, under the doctrine of promissory estoppel, the appellants are precluded from denying their obligation to reimburse the Bank for the payment made to Upland under the replacement letter of credit.

REMAINING ASSIGNMENTS OF ERROR
[6] Our conclusion that Sudha, on behalf of Dana Partnership, requested the replacement letter of credit be issued and that the appellants are estopped from denying their obligation to reimburse the Bank, is dispositive of this appeal. An appellate court is not obligated to engage in an analysis which is not needed to adjudicate the controversy before it.[6] Therefore, we need not address the appellants' remaining assignments of error.

CONCLUSION
We conclude the district court did not err in finding that the Bank issued the replacement letter of credit pursuant to Dana Partnership's request and that the appellants, under the doctrine of promissory estoppel, are precluded from denying their liability for lack of a signature on the amendment to the promissory note. Accordingly, the judgment of the district court is affirmed.
AFFIRMED.
NOTES
[1] See Pennfield Oil Co. v. Winstrom, 272 Neb. 219, 720 N.W.2d 886 (2006).
[2] Id.
[3] Griffin v. Geneva Industries, Inc., 193 Neb. 694, 696-97, 228 N.W.2d 880, 882 (1975). See, also, Shreves v. D.R. Anderson Constructors, Inc., 206 Neb. 433, 293 N.W.2d 106 (1980).
[4] Blinn v. Beatrice Community Hosp. & Health Ctr., 270 Neb. 809, 708 N.W.2d 235 (2006).
[5] Hawkins Constr. Co. v. Reiman Corp., 245 Neb. 131, 511 N.W.2d 113 (1994).
[6] Papillion Rural Fire Prot. Dist. v. City of Bellevue, 274 Neb. 214, 739 N.W.2d 162 (2007).