# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 08-1802/1874

_____

| | | |
|---|---|---|
| Fortress Systems, L.L.C., a Nebraska Domestic Limited Liability Company, | * * * | |
| Appellee/Cross-Appellant, | * * | |
| v. | * * * | Appeals from the United States District Court for the District of Nebraska. |
| Bank of the West, a California Banking Corporation, | * * * | |
| Appellant/Cross-Appellee. | * | |

_____

Submitted: January 15, 2009
Filed: February 23, 2009

_____

Before MURPHY and SMITH, Circuit Judges, and LIMBAUGH,[1] District Judge.

_____

MURPHY, Circuit Judge.

Fortress Systems, L.L.C., (Fortress) brought this action against Bank of the West (the Bank) seeking damages for its refusal to extend a loan. Fortress asserted three claims under Nebraska law: (1) breach of contract, (2) promissory estoppel, and (3) breach of the duty of good faith and fair dealing. The district court granted summary judgment to the Bank on the first and third claims; the second claim was

_____

[1]The Honorable Stephen N. Limbaugh, Jr., United States District Judge for the Eastern District of Missouri, sitting by designation.

tried to the court which awarded judgment to Fortress on its claim of promissory estoppel. The Bank now appeals the judgment in favor of Fortress and the calculation of damages. Fortress cross appeals the adverse grant of summary judgment on its claims for breach of contract and breach of the duty of good faith and fair dealing, as well as the calculation of damages. We affirm in part and reverse in part.

I.

Fortress is a Nebraska limited liability company which produces the nutritional supplement creatine. In 1999 the company secured a patent for an effervescent form of its product which induced members of the Broderick family to invest $750,000 in Fortress. The company contracted with outside packagers to mix and produce its products, but by 2001 the company's two majority owners—brothers Joseph and Michael Carnazzo—became dissatisfied with the quality of the outside vendors' work. Hoping to gain more control over the manufacturing process, the Carnazzos decided to develop their own production capacity. They began to plan for a suitable facility, but the Broderick family resisted.

The Carnazzos then recruited an experienced financier named John Houston to invest in the company. Houston attempted to buy out the Brodericks, but the family rejected Houston's offer. Houston and the Carnazzos then invoked a Nebraska law providing for the forced buyout of minority shareholders and paid the Brodericks $87,526 for their interest in the company. The Brodericks believed they had been underpaid and in August 2001 brought suit in Nebraska state court to determine the fair value of their dissenting shares.

Bank of the West is a California banking corporation.[2] In October 2001 Houston met with Bank loan officer Christy Edwards to discuss possible financing for Fortress's planned new production facility. On November 30 the Bank issued a commitment letter in which it outlined proposed terms for a $2.2 million loan for equipment purchases and a $1 million operating line of credit. The terms of the commitment letter were subject to the approval and execution of formal loan documents, the production of satisfactory opinion letters by legal counsel, and compliance with all title, tax, insurance, and regulatory requirements. The letter concluded with the following two paragraphs:

> By signing below, Fortress system [sic] acknowledges the terms hereof, that this is a commitment only, and that a formal Loan Agreement must be entered into and all terms and requirements thereof met to the satisfaction of [the Bank] before [the Bank] will be obligated to close and fund the loan generally outlined in this commitment.
>
> . . . .
>
> The undersigned acknowledges that he has read the foregoing commitment and understands as an authorized officer and for and on behalf of Fortress Systems that [the Bank] is not obligated to close and fund a loan to Fortress Systems until formal loan documentation is agreed to between [the Bank] and Fortress Systems, is executed, and all terms and conditions thereof are met to the satisfaction of [the Bank].

The letter was signed by Michael Carnazzo on behalf of Fortress on December 5, 2001.

---

[2]Fortress's disputed transactions were actually conducted with Commercial Federal Bank in Omaha, but Bank of the West is the successor by merger to Commercial Federal.

Edwards next prepared a draft loan agreement and submitted it for Houston's review. Houston responded on December 6 and indicated several alterations and amendments were necessary before closing on the loan. He also opined that the Broderick lawsuit ought not pose a problem, evidently because it was directed against himself and the Carnazzos rather than the company itself. Edwards and her immediate supervisor Richard Osher claimed this was the first time the Broderick lawsuit had been disclosed to them.

On December 10 Edwards and Osher again met with Fortress to discuss the loan application. Edwards encouraged the Carnazzos and Houston to settle the Broderick lawsuit. Michael Carnazzo asserts that Edwards orally promised at this meeting to close on the loan if the company settled the lawsuit on terms that did not adversely affect its financial position. Edwards denies making any guarantees.

The Carnazzos and Houston thereafter entered settlement negotiations with the Brodericks. Although the minority shares had initially been valued at $87,526, the parties signed a letter of intent to settle for $4 million. The settlement was contingent on securing the loan from the Bank, and in order to finance the settlement terms Fortress had to negotiate an increase in the prices it charged its major customers. Houston characterized the large settlement amount as "ridiculous" and "greenmail."[3]

In early February 2002, Edwards prepared a revised Relationship Approval Presentation (RAP) for submission to the Bank's loan committee. In it she identified the Broderick lawsuit as having been the principal obstacle to closing on the loan and discussed the efforts by the Carnazzos and Houston to resolve it. Osher, on the other hand, refused to approve the RAP. At the end of February, Osher and Edwards informed Fortress that the Bank would not make the loan.

---

[3]Fortress ultimately filed for Chapter 11 bankruptcy protection; in that proceeding the Brodericks received $17,500 for their claim.

Fortress filed suit against the Bank in Nebraska state court in March 2006, and the Bank subsequently removed the case to the United States District Court for the District of Nebraska. In its first amended complaint Fortress asserted claims for breach of contract, promissory estoppel, and breach of the duty of good faith and fair dealing. The district court granted the Bank summary judgment on the two breach claims. The remaining promissory estoppel claim was then tried to the district court. After considering the evidence and the answers of an advisory jury to several interrogatories, the district court awarded judgment to Fortress and ordered the Bank to pay $1.6 million in damages. The Bank's motion to alter or amend the district court's findings was denied.

The Bank now appeals the trial judgment. Fortress also appeals the dismissal of its breach claims on summary judgment. Both sides challenge the district court's calculation of damages.

II.

We review de novo the district court's grant of summary judgment, and all facts and reasonable inferences are viewed in the light most favorable to the nonmoving party. Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Carraher v. Target Corp., 503 F.3d 714, 716 (8th Cir. 2007). In reviewing the district court's order following trial, its conclusions of law are reviewed de novo but its findings of fact are reviewed for clear error. Tadlock v. Powell, 291 F.3d 541, 546 (8th Cir. 2002). This diversity case is governed by Nebraska law.

A.

We first consider the district court's grant of summary judgment to the Bank on Fortress's claims for breach of contract and breach of the duty of good faith and

fair dealing. In the company's first amended complaint it explicitly identifies the November 30 commitment letter as the contract on which it based its breach of contract claim. Under Nebraska law, however, "[a] contract is not formed if the parties contemplate that something remains to be done to establish contractual arrangements or if elements are left for future arrangement." Neb. Nutrients, Inc. v. Shepherd, 626 N.W.2d 472, 499 (Neb. 2001).

The letter of commitment in this case was unambiguously nonbinding. In particular, the letter recited that the Bank "is not obligated to close and fund a loan to Fortress Systems until formal loan documentation is agreed to between [the Bank] and Fortress Systems, is executed, and all terms and conditions thereof are met to the satisfaction of [the Bank]." The district court correctly concluded that such a conditional letter was insufficient as a matter of law to support a claim for breach of contract.

Fortress accepts that the November 30 commitment letter, by itself, failed to bind the parties. It argues instead that Edwards's alleged December 10 oral promise to fund the loan if the Broderick lawsuit were settled was itself a unilateral offer to contract which the company could accept by successfully resolving the lawsuit. Fortress asserts that by negotiating a settlement agreement with the Brodericks it effectively accepted the Bank's offer, and a contract was formed. Alternatively, Fortress argues that the December 10 oral promise allegedly made by Edwards essentially amounted to a waiver which supplanted all the conditions of the commitment letter with the single prerequisite that the company settle the Broderick lawsuit. Fortress suggests that this alleged waiver converted the commitment letter into a binding contract.

Neither of these theories is consistent with Fortress's first amended complaint which did not even mention the December 10 conversation. Even assuming that liberal pleading rules would allow the company to proceed under these circumstances,

its argument fails on the merits. Nebraska has enacted a specialized statute of frauds applicable to credit agreements. State law requires that, with certain exceptions none of which is relevant here, any contract for the extension of credit (or any amendment thereto) must be set forth in a writing signed by <u>both</u> parties. Neb. Rev. Stat. §§ 45-1,112 to -1,113 (1998). While the commitment letter is in writing and signed by both parties, the same is not true for Edwards's alleged oral promise. Under Nebraska law, that promise could therefore neither give rise to a contract nor modify one, and Fortress's breach of contract claim must fail as a matter of law.

Since Fortress has failed to establish the existence of a contract, it likewise lacks support for an implied duty of good faith and fair dealing. <u>See</u> <u>Spanish Oaks, Inc. v. Hy-Vee, Inc.</u>, 655 N.W.2d 390, 400 (Neb. 2003) (locating such duties in the contractual relationship). We therefore affirm the summary judgment granted the Bank on Fortress's claims for breach of contract and breach of the duty of good faith and fair dealing.

## B.

Nebraska courts have adopted the doctrine of promissory estoppel as defined in the Restatement (Second) of Contracts § 90(1) (1981): "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." <u>See</u> <u>Rosnick v. Dinsmore</u>, 457 N.W.2d 793, 799 (Neb. 1990).

In its first amended complaint Fortress identifies the November 30 letter of commitment as a written promise which allegedly induced detrimental reliance. The language of the letter, however, indicated that it was clearly not intended to bind the parties and was merely a statement of intent. It stated that it was a commitment only and that a formal loan document would have to be executed and all of its conditions

met before a formal obligation would arise. "[P]romissory estoppel cannot be based on preliminary negotiations and discussions or an agreement to negotiate the terms of a contract." 168th & Dodge, LP v. Rave Review Cinemas, LLC, 501 F.3d 945, 955 (8th Cir. 2007) (internal quotation marks omitted). The commitment letter on its own could therefore not have induced reasonable reliance or supported a claim of promissory estoppel.

The district court focused on the December 10 meeting at which it found, based on the advisory jury's answers to special interrogatories, that Edwards orally promised to fund the loan if the Broderick lawsuit were satisfactorily resolved. The court also found based on the advisory jury's responses that Fortress relied on this promise to its detriment and that such reliance was reasonably foreseeable. It accordingly awarded judgment to Fortress on its promissory estoppel claim.

The Bank argues that whatever representation Edwards may have made on December 10, it was oral and that any claim based on it is therefore legally barred by Nebraska law. Nebraska's statute of frauds for credit agreements is broadly written to include any "contract, promise, undertaking, offer, or commitment to loan money or to grant or extend credit." Neb. Rev. Stat. § 45-1,112(1)(a)(i) (emphasis added). Such agreements must be "in writing" and "signed by the creditor and the debtor," Neb. Rev. Stat. § 45-1,113(1). There is no doubt that failure to comply with the statute "may bar a plaintiff's claim for promissory estoppel." 168th & Dodge, 501 F.3d at 955. "[T]he mere breach or violation of an oral agreement which is specifically covered by the statute of frauds . . . is not of itself a fraud either in equity or in law for which the court should give relief. . . . [Otherwise] the statute of frauds would be rendered meaningless and nugatory." Farmland Serv. Coop, Inc. v. Klein, 244 N.W.2d 86, 90 (Neb. 1976).

In granting judgment to Fortress on this claim, the district court did note the applicability of the statute of frauds but held it was satisfied by the written and signed

letter of commitment. The November 30 letter of commitment, however, did not in any manner memorialize the critical substance of the December 10 oral statement, namely that the Bank would fund the loan upon satisfactory resolution of the Broderick lawsuit. Indeed, it could not possibly have done so since the controversy over the lawsuit did not arise until several days after the November 30 letter had been signed. Consequently, the November 30 letter cannot satisfy the statute of frauds on a claim based on Edwards's alleged promise of December 10.

Fortress has alternatively identified Edwards's subsequent written proposal to the Bank's loan committee—the previously mentioned RAP— as a writing satisfying § 45-1,113. That proposal detailed Fortress's efforts to resolve the Broderick litigation and recommended that the loan be extended. In it Edwards identified the lawsuit as the principal obstacle to closing on the loan, but the proposal does not state any promise to extend credit conditioned upon such a settlement. Moreover, the proposal is an internal bank document which was never tendered to Fortress during the relevant period. More importantly, however, Nebraska law requires that promises to extend credit by signed by <u>both</u> the creditor and the debtor. Neb. Rev. Stat. § 45-1,113. Edwards's internal recommendation to the loan committee fails to meet this critical test.

Fortress cites several cases in which promissory estoppel claims succeeded despite the lack of a written agreement, but none of its cases specifically construes § 45-1,113. <u>Whorley v. First Westside Bank</u>, 485 N.W.2d 578 (Neb. 1992), for example, did not discuss any statute of frauds at all, and in any event it was concerned with events that predated the enactment of § 45-1,113. <u>Cass County Bank v. Dana Partnership</u>, 750 N.W.2d 701 (Neb. 2008), likewise did not discuss any statute of frauds but instead construed a private contractual provision requiring that any amendments to the underlying contract be made in writing.

Although the court concluded in <u>Rosnick v. Dinsmore</u>, 457 N.W.2d 793 (Neb. 1990), that the statute of frauds does not bar all claims of promissory estoppel even in the absence of a written agreement, its reasoning was specifically grounded in the type of promise at issue in that case. For <u>Rosnick</u> involved a unilateral undertaking in which the promisor asked nothing in return from the promisee. <u>Rosnick</u> thus presented a classic example of promissory estoppel in which the absence of consideration precluded the existence of a contract. Consequently, the <u>Rosnick</u> promise was never within the statute of frauds: "Rosnick is not circumventing the statute of frauds because he never personally contracted with [the promisor] in the first place." <u>Rosnick</u>, 457 N.W.2d at 801. In the case before the court, however, the Bank's alleged promise was not unilateral. It contemplated action by the Bank (funding the loan) in return for action by Fortress (settling the lawsuit). It involved a credit agreement which was clearly within the scope of § 45-1,113. Fortress's attempt to avoid the necessity of a written agreement by pleading promissory estoppel would, if successful, circumvent the statute, "render[ing] it meaningless and nugatory." <u>Farmland</u>, 244 N.W.2d at 90.

Finally, Fortress cites <u>Hecht v. Marsh</u>, 181 N.W. 135 (Neb. 1920), for the proposition that "equity would not permit [a party] to repudiate his oral agreement on the ground of the statute of frauds." <u>Id.</u> at 137. <u>Hecht</u>'s holding, however, has been explicitly limited to "informal contracts of a unilateral nature," <u>Farmland</u>, 244 N.W.2d at 90, and this case does not involve such a unilateral contract.

Since Edwards's alleged oral promise of December 10 involved a credit agreement, it came within the ambit of § 45-1,113. There is no written agreement signed by both parties memorializing such promise, and Fortress's claim must fail as a matter of law whether pled as breach of contract or promissory estoppel. Moreover, the November 30 letter of commitment cannot satisfy § 45-1,113 since it is necessarily silent as to the heart of the alleged promise, that is that the Bank would fund the loan

if the Broderick lawsuit were successfully resolved.  For these reasons the judgment in favor of Fortress on its promissory estoppel claim must be reversed.

## C.

Because we conclude that Fortress is not entitled to judgment on any of its claims, we need not reach the parties' arguments regarding the proper calculation of damages.

## III.

For these reasons the judgment in favor of the Bank is affirmed, the judgment in favor of Fortress is reversed, and the case is remanded for entry of final judgment in favor of the Bank.

_____