771 N.W.2d 137 (2009)
278 Neb. 449
MORTGAGE EXPRESS, INC., and Jeff Rothlisberger, Appellants,
v.
TUDOR INSURANCE COMPANY et al., Appellees.
No. S-08-728.
Supreme Court of Nebraska.
August 28, 2009.
*141 Larry E. Welch, Jr., and Damien J. Wright, of Welch Law Firm, P.C., Omaha, for appellants.
Thomas A. Grennan and Francie C. Riedmann, of Gross & Welch, P.C., L.L.O., Omaha, for appellee Cincinnati Insurance Company.
Gerald L. Friedrichsen and Carla Heathershaw Risko, of Fitzgerald, Schorr, Barmettler & Brennan, P.C., L.L.O., Omaha, for appellee Tudor Insurance Company.
Patrick G. Vipond and John M. Walker, of Lamson, Dugan & Murray, L.L.P., Omaha, for appellee Peterson Brothers Insurance, Inc.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
McCORMACK, J.

I. NATURE OF CASE
In this declaratory judgment action, Mortgage Express, Inc., and Jeff Rothlisberger, its sole shareholder (collectively Mortgage Express), seek a declaration that Mortgage Express' liability insurers, Tudor Insurance Company (Tudor) and Cincinnati Insurance Company (Cincinnati) *142 are obligated to defend Mortgage Express in a suit brought against it by a third party, Village Campground (Village). Alternatively, Mortgage Express brought a claim against its insurance broker, Peterson Brothers Insurance, Inc. (Peterson), for failure to obtain adequate insurance in the event the insurance policies do not provide coverage. In December 2006, the court entered summary judgment in favor of Tudor and Cincinnati, thereby dismissing Mortgage Express' action, and Mortgage Express appealed. On February 23, 2007, the Nebraska Court of Appeals dismissed that appeal, case No. A-07-009, for lack of jurisdiction, because the court's December 2006 order did not dispose of the case as to Peterson. On April 12, 2007, the court filed another order amending its December 2006 order to include a brief statement intending to certify the order as a final, appealable order pursuant to Neb.Rev.Stat. § 25-1315 (Reissue 2008). Mortgage Express appealed again on April 30, 2007, and the Court of Appeals dismissed that appeal, case No. A-07-494, on February 7, 2008, pursuant to Neb. Ct. R.App. P. § 2-107, because the court's order failed to properly certify the case for appeal. The court filed another order dismissing Peterson, properly certifying the case as a final, appealable order, and Mortgage Express filed this appeal. We affirm.

II. BACKGROUND
The underlying action in this case involves a dispute between Mortgage Express and Village regarding certain financial transactions which affect the remaining balance of a promissory note held by Mortgage Express and are secured by real property owned by Village. On August 20, 1998, Mortgage Express purchased and was assigned a promissory note and its collateralizing liens for the sum of $252,744.38. Several time-share receivables and multiple mortgages secured the note, but only two of the mortgages are relevant to this case.
One of the two relevant mortgages securing the note included certain real estate located in Washington County, Nebraska (the Nebraska property). The Nebraska property consists of a house and 12 acres and a separate but contiguous parcel of 38 acres. Shortly after Mortgage Express purchased the note, Mortgage Express bid on and purchased the Nebraska property at a trustee's sale for $195,000, subject to the first mortgage and property taxes. The record indicates that Mortgage Express purchased the Nebraska property at the trustee's sale, but that almost immediately after the sale, title to the Nebraska property was transferred to Rothlisberger.
The other mortgage securing the note included certain real estate located in Spencer County, Kentucky (the Kentucky property), which consists of a campground. The Kentucky property was foreclosed upon, and Village purchased the Kentucky property from the foreclosure sale. After acquiring the Kentucky property, Village discovered that the attorney hired to handle the foreclosure proceedings and to conduct the title search failed to find the lien held by Mortgage Express. As such, Mortgage Express was not made part of the foreclosure sale.
Following this discovery, on May 14, 2001, Village initiated a quiet title action against Mortgage Express in the Spencer County, Kentucky, circuit court (the original action). The complaint was later amended, asserting additional causes of action. In the original action, Village asked the court to quiet title in its favor, free from all liens and encumbrances that Mortgage Express holds. On July 1, 2002, the Kentucky court ruled in favor of Mortgage *143 Express in the original action, concluding that the mortgage secured by the note was not extinguished in the foreclosure and that the mortgage remained a valid lien against the Kentucky property. Mortgage Express did not seek a defense from either of its insurers regarding the original action.
Thereafter, a dispute arose between Village and Mortgage Express regarding the amount due to satisfy Mortgage Express' mortgage. Mortgage Express initially maintained that the outstanding and unsatisfied balance due on the note was $340,153.36. Village attempted to settle the outstanding balance remaining on the note because it wished to sell the Kentucky property, but Mortgage Express refused. As a result of Mortgage Express' refusal, Village claims it could not sell the Kentucky property for its fair market value. During the ordinary course of business, Village learned that Mortgage Express bid on and won the Nebraska property but that the bid amount had not been credited to the outstanding note. Rothlisberger explained that he did not credit the sale of the Nebraska property to the note because he thought that until the property was liquidated by reselling it to a third party, he did not have to credit the note.
After Mortgage Express learned that the sale of the Nebraska property should have been credited to the note, Mortgage Express' counsel sent a letter to Village's counsel regarding the mistake. The letter indicated that after crediting the $195,000 to the note, the remaining balance was $101,565.52. Additionally, the letter stated:
I received your message that you are going to file suit against my client for sanctions. I will file our response to your suit, as well as a motion for a judgment and order of sale. Your threatened suit for slander of title is without merit since my client's lien still has a sizable balance due.
It appears that we will not be able to settle this matter, and we will need to proceed through the court in Spencer County.
This letter was sent by both U.S. mail and facsimile, and although it appears that the letter was faxed on March 4, 2003, the letter is undated.
The dispute over the balance of the note led to Village's amending its complaint in June 2003 to seek damages from Mortgage Express. In its second amended complaint, Village claimed fraudulent misrepresentation, slander of title, and abuse of judicial process, and it asserted a Kentucky statutory claim for failure to release its lien. Specifically, Village alleged that Mortgage Express misrepresented the balance remaining due on the promissory note by failing to credit Mortgage Express' bid on the Nebraska property to the balance of the promissory note. Mortgage Express maintains that this error was, at worst, a mistake and that it did not constitute fraudulent misrepresentation. Through motions for summary judgment, the Kentucky court determined that the only viable claim against Mortgage Express was for fraud.
Mortgage Express sought a defense to the above-mentioned claims brought by Village under its liability insurance policies with Tudor and Cincinnati. Tudor and Cincinnati denied that the policies required the insurance companies to defend Mortgage Express in the Village lawsuit. Mortgage Express then brought this declaratory judgment action in Douglas County District Court seeking a determination from the court that Tudor and Cincinnati are required to defend Mortgage Express against the claims Village alleged in its second amended complaint. In the *144 event that the court determined that neither insurance policy provided coverage, Mortgage Express brought an alternative claim against Peterson alleging that Peterson was liable to Mortgage Express for failing to procure proper insurance.
Peterson, acting on behalf of Mortgage Express, obtained quotes for the insurance policies at issue. Mortgage Express requested insurance coverage for rendering professional services in "processing and closing mortgage loans for all types of residential housing, in-house loan underwriting." Peterson maintains that Mortgage Express never requested insurance coverage for transactions in which Rothlisberger had a personal financial interest as a buyer or seller of real property.

1. TUDOR POLICY
On March 4, 2003, Mortgage Express applied for errors and omissions insurance coverage by and through its insurance broker, Peterson. Consequently, Tudor issued to Mortgage Express a renewal claims-made policy referred to as "Specialty Professional Liability Policy" for the period of April 20, 2003, through April 20, 2004. The Tudor policy is a claims-made policy. A claims-made policy is defined as "[a]n agreement to indemnify against all claims made during a specified period, regardless of when the incidents that gave rise to the claims occurred."[1] The retroactive date of the policy is April 20, 1998.
The Tudor policy contains certain conditions precedent to coverage. The first section of the Tudor policy provides, in pertinent part:

I. INSURING AGREEMENTS
A. COVERAGE: CLAIMS MADE CLAUSE
The Company will pay on behalf of the Insured all sums in excess of the deductible that the Insured shall become legally obligated to pay as damages because of claims first made against the Insured and reported to the Company during the policy period. This policy applies to actual or alleged negligent acts, errors or omissions arising solely out of professional services rendered for others as designated in Item 3 of the Declarations.
For this coverage to apply, all of the following conditions must be satisfied:
1. the negligent act, error or omission arising from professional services took place subsequent to the Retroactive Date stated in Item 7. [sic] of the Declarations;
2. the Insured had no knowledge prior to the effective date of this policy of such actual or alleged negligent act, error, omission or circumstance likely to give rise to a claim;
3. claim is first made against the Insured and reported to the Company during the policy period.
Additionally, the Tudor policy contains limitations and exclusions that preclude coverage under certain circumstances. The policy provides that coverage is not provided for any loss arising out of or involving any dishonest, fraudulent, criminal, or malicious act or omission of the insured. Additionally, the policy contains "Endorsement # 5," which excludes coverage for any claim based upon or arising out of "any transaction in which the Insured has a financial interest as a buyer or seller or [sic] of real property." The Tudor policy also provides that coverage is not applicable:
in connection with or arising out of or in any way involving:

*145 . . . .
F. Any act, error or omission occurring prior to the effective date of this policy if there is other insurance applicable or the Insured at the effective date of this policy knew or could have reasonably foreseen that such act, error or omission might be the basis for claim or suit.
Tudor denied coverage because a condition precedent to coverage had not been fulfilled and based on certain exclusions found in its policy.

2. CINCINNATI POLICY
Mortgage Express also held a commercial general liability coverage policy with Cincinnati. The Cincinnati policy became effective on July 15, 2001, through July 15, 2004. Pursuant to "SECTION I," "COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY," of the Cincinnati policy, Cincinnati agreed to pay those sums that the insured becomes legally obligated to pay as damages because of "`personal injury'" or "`advertising injury'" to which the insurance applies.
Under "Section VDefinitions," the policy states:
"Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:
. . . .
c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;
d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or
Oral or written publication of material that violates a person's right of privacy.
Mortgage Express argues that Cincinnati's policy definition of personal injury, specifically subsection d., includes litigation that amounts to slander of an organization's goods, products, or services. And because the claim against Mortgage Express is premised on slander of title, the claim is covered under the Cincinnati policy. Alternatively, Mortgage Express argues that the Cincinnati policy's definition of personal injury includes damages stemming from the invasion of the right to private occupancy of premises, and Mortgage Express argues that its lien is exactly thata claim of interest in the campground that through foreclosure would dispossess the owner from the property.

3. PROCEDURAL HISTORY OF THIS DECLARATORY JUDGMENT ACTION
Tudor and Cincinnati filed motions for summary judgment, and Mortgage Express filed a cross-motion for summary judgment. The court held a hearing regarding the summary judgment motions, and on December 14, 2006, the court entered an order granting summary judgment in favor of Tudor and Cincinnati, concluding that the insurance policies did not provide an obligation to defend the claims presented in the Village lawsuit and dismissed Tudor and Cincinnati.
The district court entered summary judgment in favor of Tudor based on the following four conclusions: First, the court concluded that Mortgage Express was not providing a professional service for others because Rothlisberger actually acted in his own behalf in the transactions in question. Second, the court concluded that "Endorsement # 5," which provides that the Tudor policy does not apply to any claim based upon or arising out of "any transaction *146 in which the Insured has a financial interest as a buyer or seller or [sic] of real property," precludes coverage under the facts of this case. Third, the court concluded that the Tudor policy does not provide coverage because the only viable claim remaining in the Village suit is based on fraudulent conduct. Finally, the court concluded that Mortgage Express had knowledge of the disagreement regarding the amount due under the promissory note prior to the effective date of the Tudor policy, which removes the claim from coverage.
As to Cincinnati, the district court concluded that under the terms of the Cincinnati policy, there was no duty to defend. In so concluding, the court determined that Village's claims against Mortgage Express, including slander of title, do not fit within the policy definitions. Additionally, the court reasoned that coverage was not provided because Village's claim against Mortgage Express seeks damages based on fraud, which the Cincinnati policy specifically excludes from coverage.
Subsequent to the district court's order granting summary judgment in favor of Tudor and Cincinnati and against Mortgage Express, the remaining defendant, Peterson, filed a motion for summary judgment. On June 4, 2008, the court entered summary judgment in favor of Peterson and against Mortgage Express. Mortgage Express appeals.

III. ASSIGNMENTS OF ERROR
Mortgage Express alleges, restated, that the district court erred in granting summary judgment in favor of Tudor, concluding that the Tudor policy did not provide an obligation for Tudor to defend Mortgage Express in the Village lawsuit because it found that (1) Mortgage Express was not rendering professional services for others, (2) Mortgage Express had a financial interest as the buyer and seller of the Nebraska property, (3) Mortgage Express had knowledge of the claim prior to the effective date of the Tudor policy, and (4) the Tudor policy excludes coverage for dishonest, fraudulent, or malicious acts.
Mortgage Express also alleges, restated, that the district court erred in granting summary judgment in favor of Cincinnati, concluding that the Cincinnati policy did not provide an obligation to defend it in the Village lawsuit because the suit did not fall within the policy definitions of bodily injury, property damage, personal injury, or advertising injury and because the policy excluded claims arising out of statements made by the insured that were knowingly false when made.
Finally, Mortgage Express argues that in the event this court concludes that the Tudor policy excludes coverage because the transaction at issue did not fall within the scope of the policy or, in other words, that the transaction did not constitute processing and closing mortgage loans for all types of residential housing and in-house loan underwriting, then the district court erred in granting summary judgment in favor of Peterson by concluding that there is no material issue of genuine fact.

IV. STANDARD OF REVIEW
[1,2] Summary judgment is proper if the pleadings and admissible evidence offered at the hearing show that there is no genuine issue as to any material facts, or as to the ultimate inferences that may be drawn from those facts, and that the moving party is entitled to judgment as a matter of law.[2] In reviewing a summary judgment, the court views the evidence in the light most favorable to the *147 party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence.[3]
[3] When a declaratory judgment action presents a question of law, an appellate court has an obligation to reach its conclusion independently of the conclusion reached by the trial court with regard to that question.[4]
[4] The interpretation of an insurance policy is a question of law, in connection with which an appellate court has an obligation to reach its own conclusions independently of the determination made by the lower court.[5]

V. ANALYSIS

1. GENERAL PRINCIPLES REGARDING DUTY TO DEFEND AND INDEMNIFY
[5-8] Coverage under an insurance policy or contract is generally understood to consist of two separate and distinct obligations: the duty to defend any suit filed against the insured party and the duty to pay, on behalf of the insured, sums for which the insured shall become legally obligated to pay because of injury caused to a third party by acts of the insured.[6] An insurer's duty to defend is broader than its duty to indemnify.[7] Moreover, an insurer's duty to defend is usually a contractual duty, rather than one imposed by operation of law.[8] The nature of the duty to defend is defined by the insurance policy as a contract.[9]
[9-12] An insurer's duty to defend an action against the insured must, in the first instance, be measured by the allegations of the petition against the insured.[10] In determining its duty to defend, an insurer must not only look to the petition or complaint filed against its insured, but must also investigate and ascertain the relevant facts from all available sources.[11] An insurer is obligated to defend if (1) the allegations of the complaint, if true, would obligate the insurer to indemnify, or (2) a reasonable investigation of the actual facts by the insurer would or does disclose facts that would obligate the insurer to indemnify.[12] An insurer, therefore, bears a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy.[13]
[13,14] But if, according to the facts alleged in a pleading and ascertained by an *148 insurer, the insurer has no potential liability to its insured under the insurance agreement, then the insurer may properly refuse to defend its insured.[14] And although an insurer is obligated to defend all suits against the insured, even if groundless, false, or fraudulent, the insurer is not bound to defend a suit based on a claim outside the coverage of the policy.[15]

(a) Tudor's Duty to Defend and Indemnify
We first address Mortgage Express' argument that the district court erred in finding that the Tudor policy does not provide coverage because Mortgage Express had knowledge of the negligent act giving rise to Village's claim, as our resolution of this issue is dispositive of this appeal concerning Tudor. Tudor alleges, among other things, that its claims-made policy does not provide coverage because Mortgage Express had knowledge of circumstances likely to give rise to a claim prior to the effective date of the Tudor policy.
[15,16] An insurance policy is a contract between the insurance company and the insured.[16] As such, the insurance company has the right to limit its liability by including those limitations in the policy definitions.[17] If those definitions are clearly stated and unambiguous, the insurance company is entitled to have those terms enforced.[18]
[17] Mortgage Express submitted its application for renewal of errors and omissions liability insurance on March 4, 2003. The Tudor policy declarations page shows that the renewal policy period became effective on April 20, 2003, through April 20, 2004. A condition precedent to coverage under the Tudor policy is that the insured have no knowledge prior to the effective date of the policy of the actual or alleged negligent act, error, omission, or circumstance likely to give rise to a claim. In this case, Mortgage Express clearly had knowledge of its alleged negligent act giving rise to Village's claims prior to the effective date of the Tudor policy. Mortgage Express became aware of the error, at the very latest, on March 4, 2003, as evidenced by the letter from Mortgage Express' counsel to Village's counsel. Mortgage Express argues that it did not have reason to know of the claims and that the letter was merely "sparring between attorneys."[19] We find this argument unpersuasive.
The letter clearly and definitely expressed the intentions of Mortgage Express to settle the dispute with Village in court. Moreover, the letter specifically acknowledged receiving notice of Village's intent to amend its complaint, including a request for sanctions and asserting slander of title against Mortgage Express. There is no genuine issue as to the fact Mortgage Express was unaware, prior to the effective date of the Tudor policy, of the circumstances leading up to the claims asserted in Village's amended complaint. Therefore, the Tudor policy does not provide coverage for the defense sought by Mortgage Express. Accordingly, we conclude that the district court properly entered *149 summary judgment in favor of Tudor.
We note Mortgage Express' argument that because it was covered under the prior Tudor policy at the time it became aware of the claims asserted in the amended complaint, Tudor was not prejudiced by Mortgage Express' failure to give reasonable notice. This argument is misplaced because our conclusion is that Mortgage Express failed to meet a condition precedent to coveragethat it had no knowledge prior to the effective date of the renewal policy of the circumstances giving rise to the amended complaint.
Our conclusion that there is no coverage under the Tudor policy because Mortgage Express was aware of its negligent act giving rise to Village's claim prior to the effective date of the Tudor policy is dispositive of this appeal regarding claims against Tudor. Therefore, we need not address Mortgage Express' remaining assignments of error regarding coverage under the Tudor policy.[20]

(b) Cincinnati's Duty to Defend and Indemnify
[18] Mortgage Express argues that Cincinnati was required to provide a defense because slander of title fits within the definition of personal injury in subsection d. of the policy. Subsection d. of the Cincinnati policy defines personal injury as an "injury, other than `bodily injury', arising out of one or more of the following offenses: ... d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services...."
Whether slander of title fits within the definition of personal injury is an issue of first impression for this court. However, other courts have considered the issue and concluded that title to real estate is not a good, product, or service.[21]
In Bank One v. Breakers Development, Inc.,[22] condominium owners sued an insured for slander of title arising out of errors in the legal description of the condominium property, and the insured sought coverage from its commercial general liability insurer. The court construed policy language identical to the policy language contained in Cincinnati's policy and concluded that slander of title was not one of the offenses that gave rise to "personal injury" as defined in the commercial liability policy.[23] The court explained that a reasonable person would not liken a title to real estate as a "good" or "product" and that the terms "good" or "product" referred to tangible property.[24]
In another case, Acme Const. Co., Inc. v. Continental Nat. Indem. Co.,[25] an excavator filed a declaratory judgment action against its insurer seeking a determination from the court that its insurance contract provided coverage over a lawsuit with a property owner. The insurance policy in Acme Const. Co., Inc. defined advertising injury and personal injury as "`[o]ral or written publication of material that slanders or libels a person or organization or *150 disparages a person's or organization's goods, products or services.'"[26] The court concluded that a slander of title claim did not fall within "'personal injury'" or "`advertising injury'" as defined by the policy, thus the insurer had no duty to defend. In so concluding, the court reasoned that "title to real estate is not a person, organization, good, product, or service as those terms are commonly understood," thus, slander of title did not fall within the policy coverage.[27]
We find the reasoning of the foregoing cases persuasive and applicable to this case. We thus reject Mortgage Express' argument that Village's slander of title claim falls within subsection d. of the definition of personal injury found in the Cincinnati policy.
[19] Mortgage Express' remaining argument is that Cincinnati must defend it in the underlying action because its lien is an invasion of the right to private occupancy of the premises as defined in subsection c. of the definition of personal injury, which states that "[p]ersonal injury" is "[t]he wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor." Mortgage Express provides little in the way of authority to support its contention that slander of title falls within subsection c. of the definition of personal injury.
Although this case is not directly on point, it provides guidance. In Columbia Nat. Ins. v. Pacesetter Homes,[28] the developer of a housing subdivision was sued by nearby property owners because the construction caused "noise, dust, ground vibration, diminution in the value of their property, loss of trees, and increased traffic volume."[29] The developer's comprehensive general liability insurer brought a declaratory judgment action to determine whether it had a duty to defend the developer.[30] The developer's insurance policy defined personal injury as "`wrongful entry or eviction or other invasion of the right of private occupancy.'"[31] The developer contended that this clause insured it against liability from the nuisance and trespass suits brought by the nearby property owners.[32] We held that the personal injury provisions did not create a duty to defend and stated that "the right of private occupancy is the legal right to occupy premises, not the right to enjoy occupying those premises."[33]
[20] Mortgage Express merely asserted that it held a valid, unsatisfied security interest against the property. A security interest is an interest in personal property or fixtures which secures payment or performance of an obligation.[34] Mortgage Express' security interest on Village's property does not provide Mortgage Express with either legal title or the right to possession.[35] Rather, Village, as the mortgagor, *151 retains both legal title and the right of possession.[36] Therefore, because the security interest held by Mortgage Express does not interfere with Village's legal right to occupy the premises, Mortgage Express' security interest does not fit within the subsection c. definition of personal injury. As such, Cincinnati has no duty to defend Mortgage Express and was properly granted judgment as a matter of law.

2. PETERSON'S LIABILITY
[21] Mortgage Express argues that if we find that the Tudor policy excludes coverage because the transaction at issue did not fall within the scope of the policy or, in other words, that the transaction did not constitute processing and closing mortgage loans for all types of residential housing and in-house loan underwriting, then Peterson was negligent in procuring coverage on behalf of Mortgage Express. An insurance agent who agrees to obtain insurance for another but negligently fails to do so is liable for the damage proximately caused by such negligence; the measure of damages is the amount that would have been due under the policy if it had been obtained by the agent.[37]
[22] In the present case, coverage is excluded under the Tudor policy based on Mortgage Express' failure to satisfy the conditions precedent to coverage, specifically that it must have no knowledge of the negligent act giving rise to a claim prior to the effective date of the policy. As such, we need not determine whether the transaction constituted "professional services" because even if it does, coverage would still be denied. Therefore, Peterson is not liable to Mortgage Express based upon claims that it failed to obtain adequate insurance. The district court properly entered summary judgment in favor of Peterson based on Mortgage Express' claim that Peterson failed to procure proper insurance.
We note that Mortgage Express did not assign as error the district court's grant of summary judgment in favor of Peterson based on its failure to procure insurance under the Cincinnati policy. As such, we do not need to address this issue.[38]

VI. CONCLUSION
In sum, we conclude that the record discloses no genuine issues of material facts and that Tudor, Cincinnati, and Peterson were entitled to judgment as a matter of law.
AFFIRMED.
NOTES
[1] Black's Law Dictionary 821 (8th ed. 2004).
[2] Amanda C. v. Case, 275 Neb. 757, 749 N.W.2d 429 (2008).
[3] Jardine v. McVey, 276 Neb. 1023, 759 N.W.2d 690 (2009).
[4] Neff Towing Serv. v. United States Fire Ins. Co., 264 Neb. 846, 652 N.W.2d 604 (2002).
[5] Hillabrand v. American Fam. Mut. Ins. Co., 271 Neb. 585, 713 N.W.2d 494 (2006); Neff Towing Serv. v. United States Fire Ins. Co., supra note 4.
[6] Peterson v. Ohio Casualty Group, 272 Neb. 700, 724 N.W.2d 765 (2006); Chief Indus. v. Great Northern Ins. Co., 268 Neb. 450, 683 N.W.2d 374 (2004).
[7] Peterson v. Ohio Casualty Group, supra note 6; John Markel Ford v. Auto-Owners Ins. Co., 249 Neb. 286, 543 N.W.2d 173 (1996).
[8] Peterson v. Ohio Casualty Group, supra note 6; Chief Indus. v. Great Northern Ins. Co., supra note 6.
[9] Id.
[10] Peterson v. Ohio Casualty Group, supra note 6; Millard Warehouse, Inc. v. Hartford Fire Ins. Co., 204 Neb. 518, 283 N.W.2d 56 (1979).
[11] See Neff Towing Serv. v. United States Fire Ins. Co., supra note 4.
[12] Peterson v. Ohio Casualty Group, supra note 6; Mapes Indus. v. United States F. & G. Co., 252 Neb. 154, 560 N.W.2d 814 (1997).
[13] See Allstate Ins. Co. v. Novak, 210 Neb. 184, 313 N.W.2d 636 (1981).
[14] See Allied Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co., 243 Neb. 779, 502 N.W.2d 484 (1993).
[15] Peterson v. Ohio Casualty Group, supra note 6; Neff Towing Serv. v. United States Fire Ins. Co., supra note 4.
[16] Hillabrand v. American Fam. Mut. Ins. Co., supra note 5.
[17] Id.
[18] Id.
[19] Brief for appellants at 31.
[20] See Cass Cty. Bank v. Dana Partnership, 275 Neb. 933, 750 N.W.2d 701 (2008).
[21] See, Nationwide Mut. Ins. Co. v. Lake Caroline, Inc., 515 F.3d 414 (5th Cir.2008); Bank One v. Breakers Development, Inc., 208 Wis.2d 230, 559 N.W.2d 911 (Wis.App.1997); Acme Const. Co., Inc. v. Continental Nat. Indem. Co., 2003 WL 194879 (Ohio App.2003).
[22] Bank One v. Breakers Development, Inc., supra note 21.
[23] Id.
[24] Id.
[25] Acme Const. Co., Inc. v. Continental Nat. Indem. Co., supra note 21.
[26] Id. at *7.
[27] Id.
[28] Columbia Nat. Ins. v. Pacesetter Homes, 248 Neb. 1, 532 N.W.2d 1 (1995).
[29] Id. at 14, 532 N.W.2d at 9.
[30] Columbia Nat. Ins. v. Pacesetter Homes, supra note 28.
[31] Id. at 14, 532 N.W.2d at 9.
[32] Columbia Nat. Ins. v. Pacesetter Homes, supra note 28.
[33] Id. at 15, 532 N.W.2d at 9 (emphasis in original).
[34] See Neb. U.C.C. § 1-201(37) (Reissue 2001).
[35] See 24th & Dodge Ltd. Part. v. Acceptance Ins. Companies, 269 Neb. 31, 690 N.W.2d 769 (2005).
[36] See id.
[37] Broad v. Randy Bauer Ins. Agency, 275 Neb. 788, 749 N.W.2d 478 (2008).
[38] See Suburban Air Freight v. Aust. 262 Neb. 908, 636 N.W.2d 629 (2001).