[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-10564
_____

D.C. Docket No: 0:11-cv-60558-JIC

JAMES RIVER INSURANCE COMPANY,

Plaintiff-Counter Defendant-Appellee,

versus

FORTRESS SYSTEMS, LLC,

Defendant-Appellant,

BODYWELL NUTRITION, LLC,

Defendant-Counter Claimant-Appellant.
_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(June 24, 2014)

Before MARCUS, Circuit Judge, and PROCTOR[*] and EVANS,[**] District Judges.

_____

[*] The Honorable R. David Proctor, United States District Judge for the Northern District of Alabama, sitting by designation.

[**] The Honorable Orinda D. Evans, United States Senior District Judge, for the Northern District of Georgia, sitting by designation.

PER CURIAM:

This is an appeal from a final judgment under Federal Rule of Civil Procedure 56 in favor of James River Insurance Company on its claim for declaratory relief seeking a determination that it has no obligation to defend or indemnify its insured, Fortress Systems, LLC ("FSI"), in an underlying lawsuit, Bodywell Nutrition LLC v. Fortress Systems, LLC, filed in the Southern District of Florida (the "underlying case").  We are called upon to address the effect of an Auto, Aircraft, and Watercraft Exclusion (otherwise known as the "Absolute Auto Exclusion") contained in the parties' Commercial General Liability policy.  After careful review and with the benefit of oral argument, we affirm.

## I.  BACKGROUND

As this appeal involves a coverage question, we begin by reviewing the relevant facts of the underlying case.  Bodywell is a sports nutrition and dietary supplement company.  It contracted with FSI, a dietary supplement manufacturer, to manufacture a powder-form drink called First Order, which is designed to be soluble in liquid.  They agreed that FSI would not only manufacture the product, First Order, but also arrange to ship the product to Bodywell's distributors.  Upon its delivery, however, it was discovered that the product made and shipped by FSI was defective because the powder clumped together and was insoluble.  FSI had

2

contracted out the delivery of the product to certain shipping companies, but those companies used vehicles without proper cooling systems.

Bodywell filed suit against FSI and made claims for breach of express warranty, breach of implied warranty of fitness for a particular purpose, and breach of implied warranty of merchantability. Bodywell later amended its complaint to add an additional claim for negligent shipping/transport of First Order by FSI's subcontractors. As part of that claim, Bodywell asserted that FSI's shippers "either used transport vehicles that were not temperature-controlled or did not use any temperature-controlling capabilities that were available in those vehicles."

FSI had previously been issued a Commercial General Liability Insurance ("CGL") Policy with James River. FSI tendered the suit to James River for a defense under the CGL policy; however, James River denied coverage.

After James River denied coverage for Bodywell's lawsuit against FSI, Bodywell and FSI entered into a settlement agreement in the underlying case which provided, among other things, that: (1) the parties would file a stipulation of settlement and joint motion for entry of final judgment requesting that the court enter a final judgment in Bodywell's favor only on the negligent shipping/transport claim, in the amount of $10,450,000; (2) Bodywell would dismiss with prejudice its remaining claims against FSI; and (3) FSI would assign its right to pursue its claim under the James River CGL policy to Bodywell.

3

Thereafter, James River filed this action against both FSI and Bodywell (hereinafter "the Insureds") which, among other things,[1] sought a declaration that James River did not owe coverage to FSI under the insurance policy.  James River moved for summary judgment.  James River argued that there is no coverage for the claims against FSI because they fall within several coverage exclusions in the CGL policy. The Insureds also filed their own motion for summary judgment seeking a determination that James River had a duty to defend and indemnify FSI in the underlying lawsuit.  They argued that none of the exclusions applied and that the claims against FSI were covered under a "products-completed operations hazard" ("PCOH") provision in the policy. The District Court granted summary judgment for James River concluding, among other things, that the damage to the product, First Order, fell within the Absolute Auto Exclusion.  It further held that the PCOH definition did not provide coverage, nor did it create any ambiguity in the policy.

On appeal, Bodywell and FSI make a number of arguments, including their contention that the Absolute Auto Exclusion is ambiguous and, therefore, unenforceable in light of the PCOH provision.

---

[1] James River's complaint also alleged that the claimed damages fell within several exclusions to coverage, FSI is not covered because it breached the cooperation clause of the policy, and asked the court to find, in the alternative, that coverage is limited by certain amendments to the policy.  In light of our holding on the Absolute Auto Exclusion, we need not address these additional issues.

## II.  THE RELEVANT POLICY PROVISIONS

The CGL policy at issue in this matter contains several sections that are relevant to the parties' dispute:  Section I - Coverages; Section II - Who is an Insured; Section III - Limits of Insurance; Section IV - Commercial General Liability Conditions; Section V - Extended Reporting Periods; and Section VI - Definitions.  Within Section I, there are three types of Coverages: Coverage A, Bodily Injury and Property Damage; Coverage B, Personal and Advertising Injury Liability; and Coverage C, Medical Payments.  Section A contains certain Exclusions, one of which is the Absolute Auto Exclusion.  The applicable exclusion at issue in this case is an endorsement which replaces the Absolute Auto Exclusion in the standard CGL policy and provides as follows:

> **1. SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions,** paragraph **g.** is deleted and replaced with the following:
>
> **g. Aircraft, Auto Or Watercraft**
>
> "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft. Use includes operation and "loading or unloading" which includes the handling and placing of persons by an insured into, onto or from an "auto."
>
> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which

5

caused the "bodily injury" or property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft.

By its plain language, the Absolute Auto Exclusion precludes coverage for damage arising from the use of any auto, without exception. The term "use" expressly includes not only operation, but also loading or unloading of an auto. Despite this straight forward language, the Insureds argue that this exclusion is made ambiguous and unenforceable because it is inconsistent with the PCOH provision which FSI claims it purchased with a special premium. The PCOH "provision" is found under Section IV, the "Definitions" section of the CGL policy. It provides as follows:

16.    "Products-completed operations hazard:"

a.    Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1)    Products that are still in your physical possession; or

(2)    Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a)    When all of the work called for in your contract has been completed.

b.    Does not include "bodily injury" or "property damage" arising out of:

6

(1)    The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or  unloading" of that vehicle by any insured . . . .

## III.  STANDARD OF REVIEW

We review de novo the district court's grant of summary judgment. Holloman v. Mail–Well Corp., 443 F.3d 832, 836 (11th Cir. 2006).  The interpretation of a provision in an insurance contract is a question of law that is also reviewed de novo. James River Ins. Co. v. Ground Down Eng'g, Inc., 540 F.3d 1270, 1274 (11th Cir. 2008).

## IV.  DISCUSSION

The District Court determined (and the parties do not dispute) that, under Florida's choice-of-law rules, Nebraska law applies because Florida adheres strictly to the doctrine of lex loci contractus and the parties' insurance policy was executed in Nebraska. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941) (holding that federal courts apply the choice of law rules of the state in which they sit); State Farm Mut. Auto. Ins. Co. v. Roach, 945 So.2d 1160, 1163 (Fla. 2006) (explaining that Florida follows the rule of lex loci contractus and applies the law of the place where the contract was made). Nebraska law holds that the interpretation of an insurance policy is a question of law to be determined by the court. See Olson v. Le Mars Mut. Ins. Co., 269 Neb. 800, 805 (Neb. 2005).

7

Under Nebraska law, "[a]n insurer is obligated to defend if (1) the allegations of the complaint, if true, would obligate the insurer to indemnify, or (2) a reasonable investigation of the actual facts by the insurer would or does disclose facts that would obligate the insurer to indemnify." Mortg. Express, Inc. v. Tudor Ins. Co., 278 Neb. 449, 460 (Neb. 2009). However, the insurer does not have a duty to defend if the facts as pleaded by the insured and ascertained by the insurer indicate that the insurer has no potential liability to the insured under the policy. See Peterson v. Ohio Cas. Group, 272 Neb. 700, 709-10 (Neb. 2006).

The meaning of an insurance policy is a question of law, and when reviewing a question of law an appellate court has an obligation to reach its own conclusions independently of the determination made by the lower court. Poulton v. State Farm Fire & Cas. Cos., 267 Neb. 569, 675 N.W.2d 665 (2004). The Absolute Auto Exclusion at issue excludes coverage for "'property damage' arising out of the . . . use . . . of any . . . 'auto.'" Nebraska courts hold that, in order for an injury to "arise out of" the use of an auto, there must be "some causal relationship between the injury and the use of the vehicle." Farmers Union Coop. Ins. v. Allied Prop. & Cas., 569 N.W.2d 436, 439 (Neb. 1997). As part of its negligent shipping/ transport claim, Bodywell alleged that FSI's shippers "either used transport vehicles that were not temperature-controlled or did not use any temperature-controlling capabilities that were available in those vehicles" and that

8

it was this negligence that caused damage to the product. There is no factual dispute about this allegation. Thus, we agree with the District Court that there was a clear causal connection between the use of the shippers' vehicles and the subsequent property damage. That is, the damage arose out of the use of an "auto," and the Insureds' coverage claim falls squarely within the Absolute Auto Exclusion.

The Insureds argue that the District Court erred by ignoring what they characterize as a conflict between the Absolute Auto Exclusion and the PCOH "coverage." They argue that this conflict created an ambiguity that should have been resolved in favor of finding coverage. To the contrary, James River contends that the PCOH provision is merely a definition as opposed to a coverage grant. Thus, the dispositive question on appeal is whether there is tension between the PCOH provision and the Absolute Auto Exclusion of the policy.

The court has not found, and the parties have not directed the court to, any cases applying Nebraska law and which consider the interplay between a PCOH provision and an Absolute Auto Exclusion. However, James River has cited a decision from the Southern District of Florida which analyzed policy provisions identical to the ones currently before the court. See Sparta Ins. Co. v. Colareta, 2014 WL 31986, *7 (S.D. Fla. 2014).

9

In Sparta, Judge Rosenbaum held that a PCOH provision in an insurance policy is not a free-standing form of coverage, but rather is only a definition which applied to certain coverage under the policy (Coverage A), to which the Absolute Auto Exclusion also applied.  Sparta Ins. Co., 2014 WL 31986 at *7.

> Because the Court has already determined that the products-completed operations hazard does not provide separate coverage, the Court need not address Defendants' argument concerning the interplay between the products-completed operations hazard and the Auto Exclusion. The products-completed operations hazard is relevant only with respect to Sparta's limit of liability under the CGL. As a result, if Defendants' claims are otherwise subject to exclusion under Coverage A, it matters not whether the claims fall under the products-completed operations hazard, as coverage will have already been deemed precluded.

Id.; accord Ash v. Gainsco, Inc., 23 Fed.Appx. 797, 798 (9th Cir. 2001); see also Pennsylvania Nat. Mut. Cas. Ins. Co. v. Snider, 2014 WL 535651, *11 (M.D. Ala. 2014) ("Products-completed operations hazard" is listed in the Definitions section of the Policy only and is not designated as a separate type of coverage.")

James River has also cited Erickson v. LeRoy Carhart, Farm Bureau Insurance Company, 1996 WL 674334 (Neb. App. 1996) for the proposition that a PCOH provision is subject to the general exclusions in the policy.  There, the Nebraska Court of Civil Appeals concluded, consistent with the analysis of the courts in Sparta and Pennsylvania National, that a PCOH provision is merely a definition applicable to only one section of the policy, while exclusions are applicable to the entire policy.  Erickson, 1996 WL 674334 at *7.

10

After careful review, we agree with the District Court that, under the plain language of the CGL policy, there is no coverage available here because the Absolute Auto Exclusion excludes that coverage. The PCOH provision in the policy does not change this analysis. Because we find that the Absolute Auto Exclusion applies as a matter of law, and that this issue is dispositive of this appeal, we need not address the parties' other arguments.[2]

## V.  CONCLUSION

Based upon the plain language of the policy, Bodywell's claims against FSI are subject to the Absolute Auto Exclusion under Coverage A. The PCOH definition does not operate to create an ambiguity in light of such a clear exclusion. Therefore, the decision of the District Court is **AFFIRMED**.

---

[2] For example, it is unnecessary for the court to address the Insureds' argument that the District Court erred in granting James River's Motion for judicial estoppel. Even accepting the Insureds' argument that FSI's negligence in loading caused the spoilage of First Order product, the Absolute Auto Exclusion still applies because the loading relates to the use of an "auto."